763 So.2d 94 (2000)
BARTLETT CONSTRUCTION COMPANY, INC.
v.
ST. BERNARD PARISH COUNCIL, et al.
No. 99-CA-1186.
Court of Appeal of Louisiana, Fourth Circuit.
May 31, 2000.
Rehearing Denied June 30, 2000.
*96 David J. Krebs, Alberta Louise Adams, Preaus, Roddy & Krebs, New Orleans, Louisiana, Counsel for Plaintiff/Appellant.
Thomas P. Anzelmo, M. Grace Ratnesar, Richard A. Houston, III, Campbell, Mccranie, Sistrunk, Anzelmo & Hardy, Metaire, Louisiana, Counsel for Defendants/Appellees.
Court composed of Judge STEVEN R. PLOTKIN, Judge DENNIS R. BAGNERIS, Sr., and Judge PHILIP C. CIACCIO, Judge Pro Tem.
BAGNERIS, Judge.
Plaintiff/Appellant, Bartlett Construction Company ("Bartlett"), appeals the judgment of the 34th Judicial District Court for the Parish of St. Bernard, in favor of Defendant/Appellee, St. Bernard Parish Counsel, et al. ("St.Bernard"), against Bartlett. The trial court held that (1) St. Bernard did not breach its contracts with Bartlett as the contracts were valued between $75,000 to $150,000, and Bartlett was paid $420,263.00 in accordance with the work it performed pursuant to the contracts; (2) the contracts did not guarantee continuous work for a year; (3) Bartlett failed to prove a claim of detrimental reliance; and (4) Bartlett was not entitled to damages. On appeal, Bartlett argues that the trial court erred (1) in concluding as a matter of law and/or fact that Bartlett could not detrimentally rely on the representations of the St. Bernard Parish Engineer; (2) in its interpretation of the contracts, and in finding that St. Bernard did not breach the contracts; (3) in failing to find that St. Bernard breached its duty of good faith and fair dealing to Bartlett; and (4) in failing to address Bartlett's claim for an unpaid invoice. Notwithstanding, for the reasons stated below, we affirm the ruling of the trial court.

FACTS AND PROCEDURAL HISTORY
On January 22, 1991, the Chief Administrative Officer of St. Bernard Parish and the Parish Engineer presented a Capital Improvement Plan (the "Project") to the St. Bernard Parish Police Jury (the "Police Jury") at a regular meeting. The Project set out a specific amount of money to be spent on each area of the Parish, a general description of the nature of the work, and the designated fund from which the work would be paid. The Project was to be funded by a 1986 sales tax bond fund.
In February and March of 1991, in connection with the Project, the Parish Engineer, James San Martin ("Mr. San Martin"), advertised and re-advertised several different types of capital works, with several contracts to be awarded to multiple contractors. The contracts were advertised at different times, and separate contract documents were prepared. Mr. San Martin was responsible for oversight and administration of the contracts.
Charles Bartlett, who along with his wife owned Bartlett, saw a public advertisement of the Project and obtained a copy of the bid documents. The contracts were bid on a line item units price basis and were awarded to the lowest bidder on each particular item. Bartlett bid on and was awarded six contracts. Five of the contracts were identified at trial: E-002-91, E-015-91, E-016-91, E-101-91, 022-91, and E-002-91 (hereinafter "# 2, # 15, # 16, # 10, and # 22").
Contracts # 2, # 15, # 16 involved work similar to that involved in Contracts # 10 and # 22, but in a single location. Contracts # 10 and # 22 involved work, which the Parish described in its advertisement for bids as "installation of culverts, repair/replacement of sidewalks, curbs and driveway aprons and digging and cleaning of ditches for the parish for one year."
On July 2, 1991, Bartlett entered into Contract E-010-91, as he was the lowest bidder on Items 6.16, 6.17, 7.16, 7.17, 9.1, and 12. In conjunction with this contract, Bartlett submitted Labor and Material Payment Bond # 00795 from Protective *97 Casualty Insurance Company dated April 25, 1991, in the amount of $150,000. The bond described the "contract" to be bonded as the "installation of culverts, repair/replacement of sidewalks, curbs and driveway aprons and digging and cleaning of ditches for one year."
On July 9, 1991, due to the withdrawal of two other contractors, Bartlett was awarded several additional line items or sub-parts in accordance with Specification # 1. Accordingly, a second contract was prepared and executed on July 17, 1991, which included the additional line items. This contract was labeled # E-022-91. Bartlett did not procure a bond for this contract; instead, he attached a copy of Protective Casualty Labor and Material Bond # 00975 to the second contract. Also on that day, Bartlett received its first Notice to Proceed on contract E-010-91.
On July 23, 1991, Bartlett received its second Notice to Proceed on contract 022-91. After the Notices to Proceed were issued, individual work orders were given to Bartlett for each location where work was to be performed with a description of the work to be done specified by the Engineer's office. The last work order was issued to Bartlett on November 20, 1991. There were no other work orders issued after November 20, 1991 on these two contracts or to any other contractors. The total value of work performed by Bartlett during the course of contracts # 10 and # 2 was approximately $420,263.46.
In the Fall of 1991, the sales tax bond fund became overextended due to the cost of the work being performed exceeding the amount that was originally contemplated. Specifically, $2.4 million was originally allocated for the Project, while more than $3 million was actually spent. Due to an availability of surplus funds from a sales tax windfall, money was transferred into the account to pay for the deficit. However, as a whole, the Parish was in severe, economic trouble.
In October of 1991, the St. Bernard Parish form of government changed by election from a Police Jury to a Home Rule Charter. Lynn Dean ("Mr.Dean") was elected Parish President; however, he did not officially take office until January of 1992. The 1986 sales tax bond fund at that time was in deficit.
In early 1992, Bartlett was advised that the Parish did not reasonably foresee issuing any more work orders to him. Notwithstanding, Bartlett directed a series of letters to the Parish demanding a letter of termination which the Parish did not comply. Bartlett subsequently initiated suit against the Police Jury. On appeal Bartlett raises two issues: (1) Breach of Contract, and (2) Detrimental Reliance.

BREACH OF CONTRACT

Standard of Review
The issue of whether or not the language of a contract is ambiguous is an issue of law subject to de novo review on appeal. Orleans Parish School Board v. City of New Orleans, 96-2664 (La.App. 4 Cir. 9/3/97), 700 So.2d 870. "In the interpretation of contracts, the trial court's interpretation of the contract is a finding of fact subject to the manifest error rule." Grabert v. Greco, 95-1781, (La.App. 4 Cir. 2/29/96), 670 So.2d 571, 573. In applying the manifest error rule to the trial court's interpretation, the Court of Appeal may not simply substitute its own view of the evidence for the trial court's view, nor may it disturb the trial court's finding of fact so long as it is reasonable. Syrie v. Schilhab, 96-1027, (La.5/20/97), 693 So.2d 1173. In such cases, appellate review of questions of law is simply to determine whether the trial court was legally correct. McCrory v. Terminix Service Co., Inc., 609 So.2d 883 (La.App. 4 Cir.1992);Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 93-2364 (La.App. 4 Cir. 10/2/96), 681 So.2d 1292, writ denied, 96-2625 (La.12/13/96), 692 So.2d 1066 (holding that whether the words of a contract are "clear and explicit" or ambiguous is a question of law; therefore, *98 the appellate review of such a legal question is constrained to a determination of whether the trial court's interpretation is legally correct or incorrect.)
In interpreting contracts, we are guided by the general rules contained in articles 2045-2057 of the Louisiana Civil Code. The cardinal rule is set forth in La. Civ.Code. art. 2045, which states that the interpretation of a contract is the determination of the common intent of the parties. To ascertain the parties' intent, the court must first look to the words and provisions of the contract. Amend v. McCabe, 95-0316 (La.12/1/95), 664 So.2d 1183. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ.Code. art. 2046. To wit, when the language of the contract is unambiguous, the letter of the clause should not be disregarded under the pretext of pursuing its spirit. La. Civ.Code art. 2046, comment (b); Cashio v. Shoriak, 481 So.2d 1013, 1015 (La.1986); Amoco Production Co. v. Fina Oil & Chemical Co., 95-1185 (La. App. 1 Cir. 2/23/96); 670 So.2d 502.
Moreover, to determine the meaning of words used in a contract, a court should give them their generally, prevailing meaning. If a word is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the object of the contract. La. Civ.Code art. 2048. A provision susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. La. Civ.Code art. 2049.
The meaning and intent of the parties to a written instrument is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument Ortego v. State, DOTD, 96-1322 (La.2/25/97), 689 So.2d 1358. Thus, the general rule which applies to contracts is that extrinsic evidence is admissible only "when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 748. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after examination of the four corners of the agreement. Amoco, 670 So.2d at 511.
Therefore, each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ.Code art. 2050. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. La. Civ.Code art. 2053.

INTERPRETATION OF CONTRACTS
In the present case, the General Specifications ("specifications") in dispute are as follows:
1. Due to the amount of work, object of this bid, the St. Bernard Parish Police Jury will seek to award contracts on an individual item basis, unless a responsive contractor is low bidder on all items.
5. It is assumed that all contracts will be above $75,000.00, but below $250,000; therefore, the applicable prevailing wages must be used. Only St. Bernard Parish Police Jury bond funds will be used for payment purposes.
These specifications were provided to all potential bidders, and were eventually incorporated into all the awarded contracts. The Form of Proposal stated that the work would be for "one year."
*99 Bartlett argues that the Trial Court erred in not considering parol evidence as to the following issues: (1) Whether under the Form of Proposal, the work performed under these contracts was guaranteed to be continuous for one year, and (2) Whether based upon specifications # 1 and 5 each line item awarded was intended to have a minimum value of $75,000. Bartlett argues that the word "contract" in specification # 5 should be interpreted to mean "each line item." Moreover, Bartlett asserts that the Police Jury breached the terms of the contract in question when it unilaterally stopped providing Bartlett with work orders at a time when neither the $75,000 per line item had been paid nor the one year contract term had expired.
On the other hand, St. Bernard argues that Bartlett's interpretation of specification # 5 is contrary to the generally, prevailing meaning of the word "contract," and the contract document as a whole. Likewise, it contends that a review of the two contract documents reveals that every time the word "contract" is used, it refers to the entirety of either # 10 or # 22, not to any individual line items.
We agree with St. Bernard's interpretation, as did the Trial Judge, who found that the word "contract" used in specification # 5 clearly was meant to include the contract as a whole, and not each individual line item. The trial court's rejection of Bartlett's argument is based on the fact that Bartlett was awarded thirty-nine (39) line items. Therefore, under Bartlett's interpretation of the contract, the 39 line items would be worth at a minimum almost 3,000,000.00. The trial court found that this amount did not conform with the object of the contract, or the intent of the parties. Moreover, he held that Bartlett's suggested interpretation of a contract would yield such absurd results that it would violate our most basic contract laws. We agree.
The trial court's judgment is also supported by Bartlett's own action. The bond procured by Bartlett provides further evidence that Bartlett knew that the two contracts, # 2 and # 10, included all of the 39 line items. St. Bernard asserts that Bartlett, as required under La. R.S. 38:2212[1], submitted a Labor and Materials Payment bond in the amount of $150,000 when it entered into Contract E-101-91. The same bond was later used for contract E-022-91. St. Bernard notes that the bond is sufficient only if specification # 5 is read to refer to the contract documents as a whole. In that case, the two contracts together would be worth a minimum of $150,000 ($75,000.00 × 2 = $150,000). On the other hand, reading it to refer to each line item makes the contracts worth a maximum of $300,000.00 ($150,000.00 × 2 = $300,000.00). The $150,000 bond properly provides coverage for 50% of the maximum and 100% of the minimum that could have been awarded under the interpretation of the contracts urged by St. Bernard.
Nevertheless, Bartlett argues that the Parish's argument is nothing more than a red herring. It urges that the bond must be interpreted under the Public Works Act. Bartlett contends that, under the Act, the surety is obligated to the Parish for the bond penalty set forth in the Public Works Act regardless of the penal sum stated in the bond. Bartlett concludes that the contract that dictates the amount of the bond, rather than the bond that dictates the amount of the contract. We disagree with that interpretation of the Public Works Act.
We find, contrary to Bartlett's argument, that the bond serves as a guide to *100 the intent of the parties and their understanding of the proposed value of the contracts. First, we believe that Bartlett, an experienced and learned businessman who had dedicated his career to the construction industry, was intimately familiar with the requirements of the Public Works Act. However, Bartlett would like this Court to find that despite the fact he reasonably believed that the value of his contract with St. Bernard was $2,925,000.00, he acquired a performance bond in the amount $150,000,00 in good conscience. The minimum bond required under the law for a contract of that magnitude would be $1,462,000.00. A bond of $150,000.00 barely constitutes a tenth of the minimum required amount. Second, Bartlett would have this Court conclude that St. Bernard simultaneously selected a bond value that was not only woefully below the fifty percent dictated by the Public Bid Law, but that the bond nevertheless fits perfectly with St. Bernard's interpretation of the value of the contract.
Bartlett argues that St. Bernard breached the one-year term of the contracts by refusing to permit Bartlett to perform during the last seven months of the year despite the fact that the Project had not been completed. In support of this argument, Bartlett alleges that Mr. San Martin informed all potential bidders at the pre-bid meeting that they should forego all other employment commitments during the terms of the contract as the contracts were to guarantee continuous work for one year. Thus, it contends that St. Bernard's failure to provide it with work for the duration of the one year contract constitutes a breach of the contracts, entitling Bartlett to all lost profits and damages caused by the breach. We disagree.
This Court is not persuaded by Bartlett's interpretation of the terms of this contract. It appears that Bartlett once again suggests that the language of the Form of Proposal be interpreted independent of the other terms of the contract. We find that to do so will lead to an absurd interpretation of the contract. We read the one-year term to require Bartlett to perform under the terms of the two contracts for one year. At the end of that year, its obligation to St. Bernard would terminate.
Moreover, once St. Bernard became aware that it would not issue any more work orders due to a severe over-budgeting, it quickly contacted Bartlett and the other subcontractors performing under the contracts to inform them that their services would no longer be needed. We find that St. Bernard allowed all the contractors to perform under the term of the contracts, and, when it realized that no further work would be forthcoming, it properly discharged them from their one-year commitment.
For the foregoing reasons, we hold that Bartlett was awarded two contracts valued between $75,000.00 and $150,000.00 each. Moreover, it was paid in accordance with the work performed under these contracts for the one-year contract period. We have found no breach of these contracts on the part of St. Bernard.

DETRIMENTAL RELIANCE
La. C.C. art. 1967 provides in relevant part:
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to its detriment when the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
The detrimental reliance doctrine established by the above article is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, *101 or silence. Academy Mortgage Co., LLP v. Barker, Boudreaux, Lamy & Foley, 96-0053 (La.App. 4 Cir. 4/24/96), 673 So.2d 1209. To recover when asserting a cause of action for detrimental reliance, a plaintiff must prove three elements: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance. John Bailey Contractor, Inc. v. State DOTD, 439 So.2d 1055 (La.1983).
Bartlett argues that the trial court erred as a matter of law in finding that St. Bernard was insulated from detrimental reliance claims and that a contractor is not entitled to rely upon the representations of a Project engineer. On the other hand, St. Bernard contends that the trial court properly concluded that Bartlett failed to establish that it placed any reasonable reliance on the alleged statements of Mr. San Martin. It asserts that a promisee's business acumen is properly considered when determining the reasonableness of the claimed reliance. Academy, 673 So.2d at 1211-12. It argues that Bartlett, as an experienced contractor who has performed pursuant to the Public Bid Laws in the past, should have known that all contracts entered into for the improvement of public works must be in writing under La. R.S. 38:2216. Thus, it argues the trial court correctly held that Bartlett should have known that Mr. San Martin lacked the authority or ability to orally alter a public works contract, and that Bartlett should have been more familiar with the contractual requirements of the Public Works Act.
Bartlett cites Louisiana Paving Co. v. State Through Dept. of Highways, 372 So.2d 245 (La.App. 1 Cir.1979), in support of its argument that it relied upon the alleged statements of Mr. San Martin to its detriment. In Louisiana Paving, the plaintiff subcontractor was hired in conjunction with a road improvement project undertaken by the State Department of Transportation. During the course of the work, Louisiana Paving's project manager, Plumlee, concluded that the project could be expedited if the project specifications were altered using a different type of material than originally planned. Plumlee subsequently approached the Department's Project Engineer, Luno, and received verbal approval of the proposed change. Although no written order was issued by the Department approving the change, Plumlee was informed that a memorandum concerning the change would be placed in the project file. Later, after the work had been performed, a dispute arose regarding payment for the additional work. Notably, during this dispute, a second project engineer who was present during the discussions between Luno and Plumlee regarding the change in construction sequence, confirmed that Luno had approved of the change upon learning that the new material had met the prerequisite of the original contract. Id.
The trial court held in favor of the plaintiff. The trial court reasoned that, while there was no written modification of the contract, Louisiana Paving changed the construction sequence in reliance upon a verbal agreement with the Department's agents. This agreement was supplemented by written notations on the plans and by further written evidence that was afterwards placed in the project file in the Department's Baton Rouge office. Thus, the trial court concluded that the Department was equitably estopped from defending the claim on the basis of the absence of a written change order. The Department appealed and the First Circuit Court of Appeal affirmed the trial court's decision. Id.
Relying upon a thorough review of the record, the First Circuit reasoned in its holding that Louisiana Paving did not vary the construction sequence until (1) verbally assured that it would be paid a specified amount for changing the procedure, and (2) Louisiana Paving's agent witnessed a notation to that effect made by the Department's Project Engineer, Luno, on the contract plans and specification. It noted *102 that it was significant that the notations to the contract were made immediately following the approval of the Assistant Chief Construction engineer's approval of the change in a telephone conversation. Lastly, the Court found that it was customary between the parties, in matters involving contract changes, for the contractor to proceed on verbal authority upon being assured of approval and upon also being assured the required written authority would follow.
Bartlett offers Louisiana Paving in support of its argument that a contractor can maintain a detrimental reliance claim against a public body in connection with a Public Works Act based upon representations made by the engineer outside of the contract. We disagree. As explained below, we find that the facts of Louisiana Paving are clearly distinguishable from the facts and nature of this case.
The Court developed an exception to the rule that applies only when direct dealings between the contractor and owner for extra work or a change in work flow to the benefit of the owner. Under circumstances giving rise to the doctrine of equitable estoppel, the owner is estopped from denying a contractual relationship with the contractor. Id. at 249.
Louisiana Paving stands for the proposition that any contract regarding a public work must comply with the Public Bid Laws, which specifically mandates that such contracts must be in writing, and that the exception applied in that case is clearly limited to situations where a contractor has specifically performed additional work or more work than was originally intended. In such situations, the benefit of the work flows to the owner who is unjustly enriched to the detriment of the contractor.
Bartlett does not fall within the exception, as Bartlett did not perform any additional work or expend any extra money in completing the work stipulated in the contract. Moreover, Bartlett's claim that it relied on Mr. San Martin's alleged statement flies in the face of the express language of the contract. Thus, it suggests that this Court ignore the clear language of this contract and rely upon the statements of Mr. San Martin, despite the fact that the trial judge, who was certainly in a better position than this Court to assess Mr. San Martin's demeanor and sincerity at trial, found his testimony unpersuasive. Bartlett's alleged reliance upon Mr. San Martin's pre-bid meeting statement is not supported by the contract. If Bartlett was indeed relying on that statement, it should have articulated its concerns before it signed a contract contrary to that statement. Bartlett should have insisted that any discrepancies be addressed in writing at that time.

CONCLUSION
Accordingly, the judgment rendered by the trial court is affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 38:2212 provides in pertinent part: A party receiving a contract for public works is required to furnish a performance bond worth not less than one half the amount of the contract.