871 So.2d 380 (2004)
LAKELAND ANESTHESIA, INC.
v.
UNITED HEALTHCARE OF LOUISIANA, INC.
No. 2003-CA-1662.
Court of Appeal of Louisiana, Fourth Circuit.
March 17, 2004.
*382 Andrew A. Lemmon, The Lemmon Law Firm, Hahnville, LA and Dennis G. Pantazis, Wiggins, Child, Quinn & Pantazis, Birmingham, AL, for Plaintiffs/Appellees.
Errol J. King, Jr., Juston M. O'Brien, Layna S. Cook, McGlinchey Stafford, PLLC, Baton Rouge, LA, Monica A. Frois, Nathalie G. Simon, McGlinchey Stafford, PLLC, New Orleans, LA and Edward Soto, Weil, Gotshal & Manges, LLP, Miami, FL and Gregory S. Coleman, Weil, Gotshal & Manges, Austin, TX, for Defendant/Appellant.
Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY.
PATRICIA RIVET MURRAY, Judge.
This is a commercial litigation by several medical providers against a health management organization (HMO). The providers allege that the HMO implemented a practice of routinely delaying payment for the services they rendered to its subscribers. The narrow issue presented is twofold: whether the trial court erred in refusing to grant the HMO's motion to compel arbitration of the entire proceeding; or, in the alternative, whether the court erred in refusing to stay the entire proceeding while the matters subject to arbitration are arbitrated. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

I.
On February 28, 2000, Lakeland Anesthesia, Inc., commenced this suit as a plaintiffs-class action on behalf of itself and other similarly situated medical providers who have submitted claims to United Healthcare of Louisiana, Inc., a HMO, according to a physician agreement or other oral or written contracts. The petition alleges that United has offered such contracts to hospitals, physicians, and other medical providers and that, according to these contracts, is obligated to pay the providers for the medical treatment they rendered to its subscribers. The petition seeks damages arising out of United's alleged routine practice of either intentionally or negligently artificially delaying payment of valid claims beyond the time provided for payment under these contracts.[1] Based on these alleged improper payment practices, the petition asserts that United is liable under: (i) the Civil Code for breach of contract and breach of the general tort duty not to cause harm to others (La. C.C. arts. 2315 and 2316), (ii) the Insurance Code for bad faith, and (iii) both codes for abuse of rights.
On April 14, 2000, United removed the case to federal court, asserting federal question jurisdiction based on complete preemption by the Employee Retirement Income Security Act, 29 U.S.C. § 1000, et seq. ("ERISA"). On April 20, 2000, Lakeland filed an amended petition in federal *383 court to add Medical Advantage Company as a plaintiff. On June 22, 2000, the federal district court, finding no basis for removal under ERISA, remanded the case. In so doing, the court noted that "Lakeland does not purport to be an assignee of a participant or beneficiary" and that "Lakeland's complaint is based on separate provider agreements as opposed to any ERISA plan or plans, and no evidence has been offered to the contrary."
On July 3, 2000, Lakeland filed a second amended petition to add Dr. Leslie Hightower as a plaintiff. The amended petition clarifies the definition of the class as including medical providers who have submitted claims to United as "in-network" or "participating" providers at any time since January 1, 1991. The amended petition also clarifies that "[t]he suit seeks interest or other delay damages and penalties arising from `in-network' `participating' claims that have been acknowledged by Defendant, but were not timely paid." The amended petition still further clarifies that the suit neither seeks damages for claims for medical treatment that was not "covered" nor for claims arising from "out-of-network" claims based only on an assignment.
On July 25, 2000, United filed a motion to stay discovery and class certification. On August 4, 2000, United filed a motion to stay all proceedings, including discovery, and to compel arbitration, and in the alternative summary judgment. Following the November 3, 2000 hearing, the trial court deferred ruling on United's motion to compel.[2]
On January 13, 2003, United filed a second motion to stay proceedings and compel arbitration. In that motion, United asserted that arbitration was required for the following reasons:
 Dr. Hightower entered into a participating physician agreement with United entitled United Healthcare of Louisiana, Inc. Physician Participation Agreement (the "Hightower Agreement").
 Section 8 of the Hightower Agreement is entitled Resolution of Disputes and requires binding arbitration for any dispute arising under the Hightower Agreement.[3] Each and every claim asserted by Dr. Hightower is subject *384 to binding arbitration under that provision.
 Medical Advantage has admitted that it is bound by the Hightower Agreement. Thus, its claims are subject to Section 8 of that agreement.
 Lakeland contends that it is a third party beneficiary under a contract similar to the Hightower Agreement, which contains an arbitration provision.[4] It is thus required to arbitrate. That contract, which is between United and Columbia Healthcare Systems of La., Inc., is the Community Health Network Hospital Participation Agreement (the "Columbia/HCA Agreement").[5]
On April 11, 2003, a hearing was held on United's motions, the trial court requested the parties file supplemental briefs addressing two issues.[6] On June 3, 2003, the trial court granted United's motion in part, ordering that the claims asserted by Dr. Hightower and Medical Advantage arising after the April 1, 2000 effective date of the Hightower Agreement be arbitrated. As to all other claims, the trial court denied United's motion to compel arbitration.[7] In so holding, the trial court relied heavily on this court's recent decision involving one of the same plaintiffs and strikingly similar issues. Lakeland Anesthesia, Inc. v. Cigna Healthcare of Louisiana, Inc., XXXX-XXXX (La.App. 4 Cir. 2/6/02), 812 So.2d 695.
Treating the claims by Dr. Hightower and Medical Advantage together,[8] the trial *385 court reasoned that the arbitration clause in the Hightower Agreement was intended to have prospective, not retrospective, application from the April 1, 2000 effective date of that agreement. In so finding, the trial court relied on the following reasoning in Lakeland, supra:
The mandatory arbitration provision in the instant case clearly refers to disputes, controversies, and questions arising under "this Agreement." Unquestionably, that provision is broad; however, as stated in Security Watch, [Inc. v. Sentinel Systems, Inc., 176 F.3d 369 (1999),] "this breadth of scope does not extend over time." Id." ... [T]he agreement between CIGNA HealthCare and Anesthesia East sets forth the "Term of Agreement" as follows: "This Agreement shall begin on the Effective Date and shall continue from year to year thereafter, unless terminated as set forth below." That provision clearly reveals that the agreement executed on September 1, 1999 was intended by the parties to be applied prospectively only, not retroactively.
Lakeland, XXXX-XXXX at p. 7, 812 So.2d at 700. By analogy, the trial court reasoned that Section 9 of the Hightower Agreement sets forth a similar term provision, providing that it "begins on the Effective Date and it shall remain in effect for one year, and shall automatically renew for successive 1-year terms until it is terminated as provided below." As in Lakeland, the trial court thus reasoned that the Term provision "precludes the arbitration of any claims or disputes prior to the April 1, 2000 effective date of the Hightower Agreement."
Turning to the claims asserted by Lakeland, the trial court noted that the issue presented is whether Lakeland as a nonsignatory to an agreement containing an arbitration provision may be required to submit its claims to arbitration. Relying on our analysis in Lakeland, the trial court stated:
Federal jurisdictions have adopted the principle that a third party beneficiary to a contract containing a mandatory arbitration provision is subject to that provision; however, in Louisiana, a contract that benefits a third party, a stipulation pour autri, must contain a clear expression of intent to benefit the third party, and this benefit cannot be incidental to the contract....
In this case, the plaintiffs alleged that Lakeland Anesthesia was a third party beneficiary of written agreements between United Healthcare of Louisiana, Inc. and Columbia/HCA. However, there was no clear expression of intent in the agreements from which Lakeland Anesthesia could derive any benefit.
The trial court thus found Lakeland was not subject to arbitration.
Finally, the trial court denied United's request to stay the entire matter pending arbitration of the claims it found subject to arbitration. This suspensive appeal by United followed.[9]

*386 II.
The arbitration issues presented in this case are complicated for three reasons: (i) this case is styled a class action, (ii) the claims asserted span about a decade (commencing January 1, 1991), and (iii) there were multiple contractual agreements between the parties over that lengthy span. Nonetheless, we find that at this juncture the issues can be simplified in that there are only two relevant agreements before us on this appeal: the Hightower Agreement and the Columbia/HCA Agreement.[10] All the assignments of error United raises on appeal revolve around those two agreements; to-wit:
1) The trial court erred in refusing to compel all of Dr. Hightower's claims to arbitration [under the Hightower Agreement] because (a) it improperly usurped the role of the arbitrator by deciding substantives issues of contract interpretation, and (b) it failed to properly recognize that the broad arbitration clause at issue applies to all conduct giving rise to the disputes in the case.
2) The trial court erred in failing to recognize that, under the doctrine of equitable estoppel, Lakeland should not have been permitted to avoid its obligation to arbitrate claims as required by the Columbia/HCA Agreement because Lakeland has benefited from that agreement to United's detriment.
3) The trial court erred in failing to stay the litigation pending resolution of the issues that it has compelled to arbitration.[11]
We thus confine our review on this appeal to those two agreements. Before reaching United's arguments regarding those agreements, we first outline the basic principles governing arbitration agreements and address the appropriate standard of review.

III.
Because arbitration is a "creature or matter of contract," a court cannot compel a party to submit to arbitration any disputes *387 that the party has not agreed to submit. Larry E. Edmondson, Domke on Commercial Arbitration § 1:2 (3rd ed. 2003) ("Domke"). A corollary of the fact that arbitration agreements are contracts is that courts must enforce arbitration agreements according to their terms. Another corollary is that such agreements must be interpreted by applying accepted rules of state contract law. Domke, supra § 1:2. Applying that principle, Louisiana courts have applied the Civil Code articles regulating the interpretation of contracts found in La. C.C. arts. 2045 to 2057 in interpreting arbitration agreements. Metro Riverboat Associates, Inc. v. Bally's Louisiana, Inc., 97-1672, p. 7 (La.App. 4 Cir. 1/14/98), 706 So.2d 553, 558.
In so doing, Louisiana courts have recognized a strong presumption in favor of arbitration. Moore v. Automotive Protection Corp., 97-0623, p. 2 (La.App. 4 Cir. 5/21/97), 695 So.2d 550, 551; J. Caldarera & Co. v. Louisiana Stadium and Exposition Dist., 98-294, p. 4 (La.App. 5 Cir. 12/16/98), 725 So.2d 549, 551. Likewise, the Louisiana Legislature has recognized the validity, irrevocability, and enforceability of arbitration agreements in La. R.S. 9:4201.[12]
Louisiana courts have recognized that the Louisiana Binding Arbitration Law, La. R.S. 9:4201-4217 ("LAL"), is virtually identical to the Federal Arbitration Act, 9 U.S.C. §§ 1-14 ("FAA"). For that reason, Louisiana courts have turned to federal jurisprudence under the FAA for guidance in construing the LAL. Blount v. Smith Barney Shearson, Inc., 96-0207, p. 5 (La.App. 4 Cir. 2/12/97), 695 So.2d 1001, 1003.[13] Both the federal and state jurisprudence hold that any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration. J. Caldarera, 98-294 at p. 4, 725 So.2d at 551.
Both the LAL and the FAA provide for specific enforcement of arbitration agreements. See Domke, supra § 1:2. Both provide that the failure of a party to comply with an arbitration agreement may be raised by a motion to stay proceeding pending arbitration. Once a court finds an arbitration agreement and a failure to comply therewith, the court is mandated to compel the parties to arbitrate their dispute. Moore, 97-0623 at p. 2, 695 So.2d at 551. Indeed, arbitration should be ordered "`unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Lakeland, XXXX-XXXX *388 at pp. 6-7, 812 So.2d at 699 (quoting AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).
In ruling on a motion to compel arbitration, the threshold inquiry a court must decide is whether the parties agreed to arbitrate their dispute. This is a twofold inquiry; to wit: (1) whether there is a valid arbitration agreement, and (2) whether the dispute in question falls within the scope of that agreement. Collins v. Prudential Ins. Co. of America, 99-1423 (La.1/19/00), 752 So.2d 825; Johnson's Inc. v. Gers, Inc., 34,268, p. 5 (La.App. 2 Cir. 1/24/01), 778 So.2d 740, 743 (citing Rogers v. Brown, 986 F.Supp. 354 (M.D.La.1997)).
Logically, since an arbitration agreement is a contract, an appellate court reviewing a trial court's decision on a motion to compel arbitration applies the same standard of review as it would apply in reviewing a trial court's decision interpreting a contract. Lakeland, supra; see also Hennecke v. Canepa, 96-0772 (La.App. 4 Cir. 5/221/97), 700 So.2d 521 (holding that the determination as to whether to compel arbitration is a question of law). Stated otherwise, an appellate court's review of a district court's decision finding the parties agreed to submit their dispute to arbitration "should proceed like review of any other district court decision finding an agreement between the parties, e.g., accepting findings of fact that are not `clearly erroneous' but deciding questions of law de novo.'" Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 532 (5th Cir.2000)(Dennis, J., dissenting)(quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). We recently enunciated that standard of review in Lakeland, supra, stating:
The issue of whether or not the language of a contract is ambiguous is an issue of law subject to de novo review on appeal. Orleans Parish School Board v. City of New Orleans, 96-2664 (La.App. 4 Cir. 9/3/97), 700 So.2d 870. "In the interpretation of contracts, the trial court's interpretation of the contract is a finding of fact subject to the manifest error rule." Grabert v. Greco, 95-1781, (La.App. 4 Cir. 2/29/96), 670 So.2d 571, 573. In applying the manifest error rule to the trial court's interpretation, the Court of Appeal may not simply substitute its own view of the evidence for the trial court's view, nor may it disturb the trial court's finding of fact so long as it is reasonable. Syrie v. Schilhab, 96-1027, (La.5/20/97), 693 So.2d 1173. In such cases, appellate review of questions of law is simply to determine whether the trial court was legally correct.
Lakeland, XXXX-XXXX, p. 3, 812 So.2d at 697 (quoting Bartlett Construction Co., Inc. v. St. Bernard Parish Council, 99-1186 at pp. 4-5(La.App. 4 Cir. 5/31/00), 763 So.2d 94, 97-98).[14]
*389 With those principles in mind, we turn to United's assignments of error.

IV.
The thirst of United's first assignment of error is that the trial court erred in relying on Lakeland to find the Hightower Agreement could not be retroactively applied. United argues that Lakeland is distinguishable, factually and legally. Legally, United contends that a trilogy of United States Supreme Court decisions handed down after this court's Lakeland decision refined the trial court's gate keeping function of deciding only questions of arbitrability.[15] Continuing, United notes that the trilogy of cases clarify that trial courts are only to decide three narrow questions: (1) if a valid arbitration provision exists, (2) if that provision applies to a particular dispute, and (3) if that provision binds non-signatories. In this case, United contends that there is no dispute over the existence of a valid arbitration provision in the Hightower Agreement or as to the applicability of that provision to the type of claims asserted in this case. Rather, United frames the dispute as whether the temporal limit imposed by the Term provision of that agreement precludes it from having a retroactive application. The latter dispute, United contends, is a question of procedural arbitrability that must be decided by the arbitrator, not the court.
Plaintiffs counter that the recent trilogy of cases did not change well-settled rules of contract construction applicable in construing arbitration provisions. They stress the well-settled jurisprudence that the court, not the arbitrator, determines if the parties have agreed to arbitrate a particular dispute. Moreover, Plaintiffs quote the following language from the recent jurisprudence: "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." International River Center v. Johns-Manville Sales Corp., XXXX-XXXX, p. 7 (La.12/03/03), 861 So.2d 139, 143 (quoting Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83-85, 123 S.Ct. 588, 593, 154 L.Ed.2d 491 (2002)). According to Plaintiffs, their claims against Dr. Hightower and Medical Advantage fall precisely into that category. We agree.
Questions regarding the scope of an arbitration provision traditionally have been construed as presenting questions of substantive arbitrability for the court to decide. As a commentator explains:
Clear contract provisions designating the issues to be arbitrated under the contract will be effectuated without a court's interpretation. When parties to *390 the arbitration agreement specially have accepted a certain type of claim for arbitration, it is the duty of the court to enforce not only the full breadth of the arbitration clause but its limitations as well. However, where the contract provisions fall within a gray area, the court will use the "positive assurance" test to determine arbitrability, which provides that an order to arbitrate an issue should not be denied unless it may be said with positive assurance that the arbitration agreement is not susceptible to an interpretation covering the dispute.
Domke, supra § 8:12. As this commentator further explains, "[t]he presumption of arbitrability under the `positive assurance' test, however, does not relieve the courts from applying traditional principles of contract interpretation in order to ascertain the intent of the parties." Id. (citing Appeal of Town of Bedford, 142 N.H. 637, 706 A.2d 680 (1998)).
Contrary to United's contention, and consistent with Plaintiffs' position, the recent trilogy of cases did not alter these settled jurisprudential rules of contract construction. Instead, the trilogy simply clarified the substantive/procedural analysis that has been employed by federal and state courts in resolving this issue. Indeed, in International River Center, supra, the Louisiana Supreme Court in classifying the issue of waiver as one of procedural arbitrability quoted extensively from Howsam, supra, reasoning:
The U.S. Supreme Court, like this court, has stated that waiver and other "procedural arbitrability" issues should be reserved to arbitrators rather than the courts. Most recently, in discussing the issue of waiver with regards to the Federal Arbitration Act, a collection of statutes which is very similar to the Louisiana Binding Arbitration Law, the Court said in Howsam ...

Although the Court has also long recognized and enforced a "liberal federal policy favoring arbitration agreements," it has made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, i.e., the "question of arbitrability," is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise."
...
* * *
Thus, a gateway dispute about whether the parties are bound by a given arbitration raises a "question of arbitrability" for a court to decide. Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court.
At the same time, the Court has found the phrase "question of arbitrability" not applicable in other kinds of general circumstances where parties would likely expect that an arbitrator would decide the gateway matter. Thus "`procedural' questions which grow out of the dispute and bear on its final disposition" are presumptively not for the judge, but for an arbitrator to decide.
International River Center, XXXX-XXXX at p. 7, 861 So.2d at 143 (quoting Howsam, 537 U.S. at 83-85, 123 S.Ct. at 593). As the above quotation reveals, the United States Supreme Court in its recent decisions reaffirmed the substantive/procedural analysis that the state and federal jurisprudence has applied in allocating the decision-making authority regarding arbitrability. See Domke, supra § 15:2 (noting both state and federal jurisdictions utilize substantive/procedural analysis when allocating the decision making authority regarding arbitrability.)
*391 Under that analysis, the question of whether the Hightower Contract applies retroactively to the pre-agreement claims asserted by Plaintiffs in this case is a question of substantive arbitrability for the court to decide. See In re Managed Care Litigation (S.D.Fla.2003), 2003 WL 22410373 (rejecting similar argument that Howsam required arbitrator to decide issues regarding scope of arbitration provision and holding that "this inquiry is within the core substantive arbitrability determination for the Court.") This question goes to the scope of the arbitration agreement. The trial court was thus the proper decision maker to decide the issue of contract construction regarding the retroactive application of the Hightower Agreement arbitration provision.
As noted, United also argues that Lakeland is factually distinguishable. United argues that the language in the arbitration provision in the Hightower Agreement is drastically different from the language in the arbitration provision in Lakeland. United further argues that despite this court's instruction in Lakeland that an individualized approach was required in determining the scope of an arbitration provision, the trial court failed to focus on the individual arbitration provision at issue here. We find this argument persuasive.
Absent from the trial court's reasons is any comparison of the wording of the arbitration provision in the Hightower Agreement with the wording of the arbitration provision at issue in Lakeland. Instead, the trial court focused solely on the comparison of the similarity of the Term provision in the Hightower Agreement to the Term provision in the agreement at issue in Lakeland.
The proper focus is on the wording of the arbitration provision. See Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 571 (4th Cir.1998)(stressing need to focus on language of arbitration clause itself and construing broadly arbitration clause providing that "[a]ny controversy or claim arising out of or relating to ... any aspects of the relationship between [the parties]"); Domke, supra § 8:12 (noting that the wording of the arbitration provision "determine[s] the scope of coverage of matters that must be submitted to arbitration.") Stressing the need to focus on the wording of the particular arbitration provision at issue, we rejected in Lakeland the defendant-HMO's reliance on a series of federal cases. Those federal cases, which included Zink v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 13 F.3d 330 (10th Cir.1993), discussed below, were cited by the defendant-HMO as standing for the proposition that the broad arbitration provision at issue applied to disputes, controversies, and questions involving treatment rendered before the effective date of the agreement. Distinguishing those cases, we relied on the fact that those federal cases all involved arbitration provisions containing "crucially different" language than the one before us. Lakeland, XXXX-XXXX at p. 8, 812 So.2d at 700. Again, we reasoned that the issue before us "must be decided on the basis of the express language of the agreement between the parties to this particular agreement." Id.
The arbitration provision in Lakeland stated that "the parties shall refer [to arbitration] the dispute[s], controvers[ies], or question[s] arising under this Agreement." Lakeland, XXXX-XXXX, p. 5, 812 So.2d at 698 (emphasis supplied). The latter reference to "this Agreement" provided the link between the arbitration provision and the Term provision. That link and the temporal limitation it incorporated into the arbitration provision was the basis for our finding in Lakeland that the arbitration provision was broad in scope, yet not extending over time. That temporal *392 link is lacking in this case. Unlike the provision at issue in Lakeland, the arbitration provision in the Hightower Agreement contains no reference limiting its scope to the agreement itself; instead, it provides that it covers "any disputes about their business relationship." As a result, the trial court's reliance on our reasoning in Lakeland to impose a temporal limitation on the arbitration provision in the Hightower Agreement was misplaced.
Broadly worded arbitration provisions lacking a temporal restriction can be retroactively applied to disputes having their origin in actions pre-dating the execution of the agreement containing such provisions. Domke, supra §§ 8:12 and 15:7. The broadly worded arbitration provision in the Hightower Agreement, as United argues, is analogous to the broadly worded provisions at issue in the federal cases we distinguished in Lakeland. Illustrative, in Zink, supra, the arbitration provision covered "any controversy between [the parties] arising out of [plaintiff's] business or this agreement." Zink, 13 F.3d at 332. Construing that provision, the federal court found a dispute arising from the purchase of bonds was subject to arbitration despite that the bonds were purchased before the parties executed the account agreement containing it. Likewise, we find no impediment to construing the arbitration provision in the Hightower Agreement as intended to apply both prospectively and retroactively.
Another factor we find relevant in this case is that the relationship between the parties has been a continuous one. Indeed, Dr. Hightower attests in his affidavit that is in the record that he had a previous contractual relationship with United. For this reason, it makes logical sense to read a broad arbitration clause in the later Hightower Agreement, which expressly provides that it covers "any disputes about their business relationship" and also provides that it supercedes all prior agreements between the parties, as encompassing the entirety of the parties' ongoing relationship.
Yet another factor that buttresses our finding that the arbitration provision in the Hightower Agreement applies retroactively is the general principle, noted earlier, that any ambiguity in an arbitration clause should be construed in favor of arbitration. Indeed, "the modern trend is to resolve any questions regarding the arbitrability of an issue in favor of arbitration." Domke, supra § 15:5.
In sum, we find the trial court erred in construing the arbitration provision in the Hightower Agreement as having only prospective application. We further find that arbitration provision encompasses all the claims asserted by Dr. Hightower and Medical Advantage in this case.[16]

V.
United's second assignment of error relates to the trial court's refusal to compel Lakeland, a non-signatory, to arbitrate its claims based on the Columbia/HCA Agreement. Invoking the equitable estoppel doctrine, United argues that it is unfair to allow Lakeland to benefit from the Columbia/HCA Agreement to United's detriment, yet to refuse to require Lakeland to comply with the arbitration provision in that same agreement. Simply put, United argues that Lakeland "cannot, on the one hand, seek to hold [United] liable pursuant to the duties imposed by the agreement *393 which contains an arbitration provision, but on the other hand, deny the arbitration [provision's] applicability because [they] are non-signator[ies] ...' To allow such inconsistent positions would be inequitable, to say the least." Grigson, 210 F.3d at 529.
Although arbitration is, by nature, contractual, a non-signatory to an agreement containing an arbitration provision may be bound by that provision under accepted theories of agency or contract law, such as equitable estoppel. Domke, supra § 13:1. The Louisiana Legislature has codified a form of equitable estoppel in La. C.C. art. 1967, which provides, in pertinent part, that "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. C.C. art. 1967; Grigson, 210 F.3d at 528 (noting that detrimental reliance is one of the elements required for the usual application of equitable estoppel). In construing Article 1967, the Louisiana jurisprudence has required the party seeking to invoke the doctrine of equitable estoppel to establish the following three requirements: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. Law v. City of Eunice, 94-1312, pp. 3-4 (La.App. 3 Cir. 4/5/95), 653 So.2d 149, 150 (citing South Central Bell Telephone v. Rouse Company of Louisiana, 590 So.2d 801 (La.App. 4 Cir.1991)).
In Lakeland, as Plaintiffs point out, we rejected a strikingly similar attempt by the defendant-HMO to invoke equitable estoppel. In so doing, we noted that the plaintiff-provider's claims clearly were based on an agreement between the defendant-HMO (CIGNA HealthCare) and Columbia/HCA to which the plaintiff-provider was not a signatory. Affirming the trial court's decision rejecting the defendant-HMO's equitable estoppel argument, we reasoned that the defendant-HMO had not claimed that it had changed its position in justifiable reliance on any voluntary conduct on the part of plaintiff-provider. Lakeland, XXXX-XXXX, pp. 9-10, 812 So.2d at 701.[17]
Attempting to distinguish Lakeland, United argues that it has changed its position in justifiable reliance on Lakeland's conduct in the following ways: (1) its attempt to remove this case to federal court was defeated by Lakeland's successful reliance on the Columbia/HCA Agreement to obtain a remand; (2) it has been forced to defend against Lakeland's claims under that agreement; and (3) it has, by Lakeland's own admission in its pleadings, paid Lakeland for Lakeland's services pursuant to that agreement.[18]
*394 We find United's attempt to distinguish Lakeland unpersuasive. Clearly, its arguments regarding having to defend against Lakeland's claims are insufficient to establish a change in position; all defendants have to defend claims asserted against them in litigation proceedings. Likewise, United's reliance on its payment to Lakeland for the services Lakeland provided United's members to establish its change in position is misplaced; United "cannot be said to have acted to [its] detriment in paying a debt [it] owed." Law, 94-1312 at p. 4, 653 So.2d at 151.
A similar argument was rejected in Law. In that case, the plaintiff-prisoner sued the City claiming detrimental reliance on a City police officer's statement that the prisoner would not be prosecuted for burglary if the prisoner paid restitution to the victim. Finding the prisoner's reliance on his payment of restitution to the victim as establishing a change in position misplaced, the court reasoned that "[i]n paying restitution Law [the prisoner] was merely acknowledging a natural obligation he owed." Law, 94-1312 at pp. 4-5, 653 So.2d at 151. Likewise, as noted above, we find United's reliance on its payments to Lakeland for services that Lakeland provided to United's members as establishing a change in position misplaced. As in Law, United's payments to Lakeland were merely payments of a debt United lawfully owed. We thus find United cannot fill the requirement that the party seeking to invoke equitable estoppel establish it changed its position.
Our finding is consistent with the federal jurisprudence, which has narrowly construed the contexts in which a signatory may compel a non-signatory to arbitrate a dispute. When a signatory to an arbitration agreement is seeking to compel a nonsignatory to arbitrate a dispute, the federal jurisprudence has required the signatory to establish the non-signatory derived a direct benefit. See 1 Thomas H. Oehmke, Commercial Arbitration § 12:1 (2003)(citing International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411 (4th Cir.2000)).[19] "Direct benefit" estoppel applies when a non-signatory plaintiff sues to enforce a contract containing an arbitration agreement, yet seeks to avoid the arbitration provision in that same agreement. Greene v. Chase Manhattan Automotive Finance Corp. (E.D.La.2003), 2003 WL 22872102 (citing Billieson, supra, as upholding similar rule).
In this case, United, a signatory, is attempting to compel Lakeland, a nonsignatory, to arbitrate based on the arbitration provision in the Columbia/HCA Agreement. In opposing that attempt, Plaintiffs emphasize that the sole relevance of the Columbia/HCA Agreement to Lakeland's claims is that it provides the custom, business practice, or other applicable law pursuant to La. R.S. 22:2018,[20] *395 requiring United to make timely, correct payments to Lakeland. Plaintiffs further emphasize that although Lakeland's claims include breach of contract, its claims also are based on oral and quasi contract theories as well as statutory theories, and its claims are plead in the alternative, as permitted by La. C.C.P. art. 892.[21] We find Plaintiffs' argument persuasive. Lakeland's reliance on the Columbia/HCA Agreement is solely to establish the payment terms. This is not a case in which Lakeland is suing to enforce that agreement. See Billieson, supra. We thus find the direct benefit estoppel theory is not applicable.
For these reasons, we affirm the trial court's decision rejecting United's attempt to compel Lakeland to arbitrate its claims pursuant to the Columbia/HCA Agreement.

VI.
United's final assignment of error challenges the trial court's decision to stay the proceedings only as to the claims that are subject to arbitration. United contends that under both the LAL and the FAA the trial court was required to stay the entire proceeding pending arbitration. See La. R.S. 9:4202. In support, United relies upon the fact that all the claims asserted against it are virtually identical and, in fact, that these claims are the basis for an asserted class action. Plaintiffs counter that the trial court's action in refusing to stay the nonarbitrable claims is similar to that in Lakeland, supra, which we affirmed.
Addressing this point, a commentator states that the general rule is that courts will only stay arbitrable claims. Domke, supra § 15:7. This commentator further notes that "court proceedings will not be stayed simply because a party claims that an arbitration proceeding involving other parties concerns the same issues and conduct." Id. (citing IDS Life Ins. Co. v. SunAmerica Life Ins. Co., 136 F.3d 537 (7th Cir.1998)). Such is the case here. We further note that a similar ruling was made, and recently reaffirmed, by the federal district court in In re Managed Care Litigation (S.D.Fla.2003), 2003 WL 22410373, which held that all claims not subject to arbitration remained before the court and were not stayed. We thus find no error in the trial court's refusal to stay the claims not subject to arbitration.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed insofar as it denied United's motion to compel arbitration of Dr. Hightower's and Medical Advantage's claims arising before April 1, 2000. As to Dr. Hightower's and Medical Advantage's claims, we hold that these claims are subject to arbitration and that as to these claims the proceeding are stayed pending arbitration. As to Lakeland's claims, the judgment of the *396 trial court denying United's motion to compel arbitration and denying its motion to stay the proceeding pending arbitration of the arbitrable claims is affirmed. This matter is remanded for further proceedings consistent with this opinion.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
NOTES
[1] In particular, the petition alleges that United routinely classified complete, clean claims as incomplete; delayed requesting information needed to evaluate, assess or resolve claims; requested information that was already in its possession; lost claims; bundled claims; failed to recognize modifiers on claims; denied claims that had been received; understand intake personnel; made arbitrary and immaterial changes to the alleged information required to process claims; frequently changed its mailing address; and otherwise delayed resolving claims.
[2] According to United, the reason the trial court deferred ruling was to allow Plaintiffs additional time to conduct discovery on the arbitration issue.
[3] Section 8 of the Hightower Agreement provides:

Plan or Payor and Physician will work together in good faith to resolve any disputes about their business relationship. If the parties are unable to resolve the dispute within 30 days following the date one party sent written notice of the dispute to the other party, and if Plan, Physician or any Payor that has consented in writing to binding arbitration wishes to pursue the dispute, it shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association. In no event may arbitration be initiated more than one year following the sending of written notice of the dispute. Any arbitration proceeding under this Agreement shall be conducted in (name of county) County, Louisiana. The arbitrators may construe or interpret but shall not vary or ignore the terms of this Agreement, shall have no authority to award any punitive or exemplary damages, and shall be bound by controlling law. If the dispute pertains to a matter which is generally administered by certain Plan procedures, such as credentialing or quality improvement plan, the procedures set forth in that plan must be fully exhausted by Physician before Physician may invoke his or her right to arbitration under this section. The parties acknowledge that because this Agreement affects interstate commerce the Federal Arbitration Act applies.
[4] In the amended complaint Lakeland filed while this case was on remand in federal court, it asserted that Lakeland was a third party beneficiary of the Columbia/HCA Agreement; however, in the subsequently filed amended petition, it is asserted that Lakeland was not a signatory to that contract.
[5] The Columbia/HCA Agreement has an effective date of January 1, 1997 and is between Community Health Network of La., Inc., which was United's successor, and Columbia Healthcare Systems of La., Inc., a hospital. Although this agreement involved United's predecessor, the parties do not mention this point. Since we find for other reasons that arbitration is not compelled under this agreement, we need not address this point. That agreement contains the following arbitration provision:

If a dispute between Plan or Payor and Hospital arises out of or is related to this Agreement, the parties to the dispute shall meet and negotiate in good faith to attempt to resolve the dispute. If ... the dispute is not resolved, and if any party wishes to pursue the dispute, it shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association.
[6] According to United, those two issues were as follows: (1) whether the Hightower Agreement applies retroactively to require arbitration of claims that arose before the April 1, 2000, effective date of that agreement; and (2) whether Lakeland, a non-signatory to any provider agreement, can be compelled to arbitrate.
[7] The trial court also granted Plaintiffs' motion to compel discovery.
[8] Medical Advantage, Dr. Hightower's wholly owned company, claims are derivative of Dr. Hightower's claims. Indeed, Plaintiffs expressly state in their memorandum opposing United's original motion to compel that Medical Advantage's claims are equivalent to Dr. Hightower's claims and that Medical Advantage was joined as a plaintiff solely "to prevent any claims that were filed by Dr. Hightower under this pseudonym from being disregarded in this proceeding." The amended petition alleges that at all pertinent times "Dr. Hightower and Medical Advantage had a contract with United under which Defendant was obligated to pay or otherwise compensate Dr. Hightower and Medical Advantage Company as an `in-network' or `participating' provider, for medical services rendered or provided to Defendant's subscribers." For those reasons, the trial court treated Dr. Hightower and Medical Advantage together. That treatment is not asserted as error on appeal. On this appeal, we likewise treat them together for purposes of our analysis.
[9] Although a decision granting a motion to compel is not appealable, Collins v. Prudential Ins. Co. of America, 99-1423 (La.1/19/00), 752 So.2d 825, a decision denying a motion to compel is appealable under La. C.C.P. art. 2083, which provides that an appeal may be taken from an interlocutory judgment which may cause irreparable harm. Rauscher Pierce Refsnes, Inc. v. Flatt, 632 So.2d 807, 809 (La.App. 4 Cir.1994). The irreparable harm in this context is that "[i]f the judgment of the trial court is erroneous and appellant has no recourse in this court the parties would be subjected to a trial in a forum which is without jurisdiction." Id.; see also Billieson v. City of New Orleans, XXXX-XXXX (La.App. 4 Cir. 9/17/03), 863 So.2d 557 (classifying as an appealable judgment one denying exception of prematurity based on right to arbitrate and motion to compel arbitration); 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Louisiana Civil Procedure § 14.3 (2003 Supp.)(citing Thomas v. Desire Community Housing Corp., 98-2097 (La.App. 4 Cir. 7/19/00), 773 So.2d 755)(noting that "[a]n order denying arbitration may produce a `Catch 22' situation unless it is immediately appealable.") Explaining the "Catch 22" situation, we noted in Thomas that if a party fails to appeal a trial court ruling denying a motion to stay or to compel arbitration and thereafter participates in the proceeding, the party will be deemed to have waived its right to arbitrate. Thomas, 98-2097 at p. 8, 773 So.2d at 759. The judgment denying United's motion to compel arbitration of certain claims and denying to stay the entire proceeding is thus properly before us on appeal.
[10] United acknowledges this fact in its brief to this court, stating "[t]his underlying litigation concerns United's performance under two of these [provider] agreements. The only issues that must be decided on this appeal relate to the enforceability of the arbitration clauses in these [two] agreements."
[11] A fourth assignment of error United makes is that the trial court erred in failing to estop Plaintiff from asserting any claims based on contractual relationships with United or, alternatively, in failing to require Plaintiffs to further amend their Petition to allege that they are not bound by any contract with United during part or all of the class period, because Plaintiffs' Second Amended Petition asserts that Plaintiffs have entered into contracts with United, but Plaintiffs have subsequently disavowed contractual relationships with United in their opposition to United's Motion to Compel. United, however, acknowledges that the trial court never ruled on this matter. For that reason, we find this assignment of error is not properly before us and decline to decide it.
[12] La. R.S. 9:4201 provides:

A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
[13] Although the Hightower Agreement expressly states that it is governed by the FAA, the trial court did not determine whether the Federal Arbitration Act ("FAA") or the Louisiana Arbitration Law ("LAL") is the governing law in this case. Moreover, Plaintiffs characterize this as a matter involving a Louisiana corporation, Louisiana physicians, and Louisiana patients and thus suggest there is no evidence this matter is "involved with" or "affects" interstate commerce as required for the FAA to apply. Nonetheless, Plaintiffs acknowledge that because of the similarity of the FAA and the LAL, Louisiana courts look to federal jurisprudence under the FAA when interpreting the LAL. Given the trial court's failure to consider this issue and given that the outcome in this case would be the same under both the FAA and the LAL, we find it unnecessary to remand for the trial court to resolve this issue before deciding this appeal.
[14] Although the parties seem to suggest there is a dispute over the applicable standard, we find this suggestion misplaced. Particularly, United contends that in this case we should conduct a de novo review for legal error. Plaintiffs counter that United failed to convince the trial court that a valid arbitration agreement existed, except for Dr. Hightower's and Medical Advantage's claim arising after April 1, 2000. Plaintiffs contend that the trial court's finding regarding the interpretation of the contract or the course of dealings between the parties is a fact finding that is subject to review under the manifest error standard. As noted above, we review the trial court's finding as to whether there is an ambiguity in the arbitration contract de novo. Assuming an ambiguity is found, we then review the trial court's factual findings in resolving that ambiguity under the well-settled manifest error standard. That standard of review is the one we enunciated in Lakeland, supra, and have followed in other cases. In Lakeland, supra, we found no ambiguity in the arbitration clause and thus proceeded to determine whether the trial court's ruling partially denying the defendant's exception of prematurity and alternative motion to stay was legally correct.
[15] See Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003)(holding question of whether contract prohibited or permitted arbitration of class action was for arbitrator to decide); PacifiCare Health Sys. v. Book, 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003)(holding question of enforceability of arbitration provision prohibiting punitive damages was for the arbitrator to decide); Howsam v. Dean Witter Reynolds, 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)(holding question regarding National Association of Securities Dealers' six year statute of limitation rule (the arbitrator's forum rule) was for arbitrator to decide). United also cites the Louisiana Supreme Court's recent decision on a similar procedural arbitrability issue. International River Center v. Johns-Manville Sales Corp., XXXX-XXXX (La.12/03/03), 861 So.2d 139 (classifying the issue of waiver of contractual arbitration provision as one of procedural arbitrability).
[16] That the claims asserted by Dr. Hightower and Medical Advantage in this case all involve the "business relationship" between the parties has not been disputed. Rather, the sole dispute is over whether the provision can be retroactively applied to encompass pre-contract disputes.
[17] In Lakeland, supra, this court also rejected the defendant's argument based on third party beneficiary status. In this case, the trial court found Lakeland was not a third party beneficiary of the Columbia/HCA Agreement, and the parties do not dispute that finding.
[18] United further argues that Lakeland not only has asserted in this suit its entitlement to payment based on that agreement, but also has filed an affidavit attesting to that position. That affidavit was by Dr. Hector Dalesandro, who attested that he was Lakeland's owner and president. Although Dr. Dalesandro executed two arguably inconsistent affidavits regarding whether Lakeland was ever a party to a written agreement with United, his second affidavit attests there was never such a written agreement. Likewise, United produced an affidavit from its representative attesting there never was such a written agreement. The record thus includes affidavits from both sides attesting to the fact that Lakeland has never been a party to a written agreement with United.
[19] A broader form of equitable estoppel has been recognized under which a non-signatory can compel a signatory to arbitrate issues intertwined with the agreement the estopped party has signed. However, this alternative theory does not apply in the flip context presented here; stated otherwise: a signatory may not estop a non-signatory from avoiding arbitration regardless of how closely affiliated that non-signatory is with another signing party. Bridas S.A. P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 361 (5th Cir.2003); see also Domke, supra § 15:7.
[20] At oral argument before this court the parties disputed the relevance of La. R.S. 22:2018. Although Plaintiffs argue that it provides an independent basis for providers like Lakeland to obtain payment, United countered that this statute imposes limitations on such right to seek payment, including that the provider lack knowledge of the patient's subscriber status. We find it unnecessary to address this statute to resolve the dispute before us.
[21] Specifically, they refer to the following allegation in the amended petition, which expressly pleads that Lakeland is "not a signatory" to the Columbia/HCA Agreement:

[United] repeatedly accepted, adopted, ratified, and/or confirmed the obligation to pay or otherwise compensate Lakeland as an `in-network' or `participating' provider for medical services rendered or provided to [United's] subscribers, due to the existence of a provider agreement or series of provider agreements between [United] and Columbia/HCA [the Columbia/HCA Agreement], and/or one of its affiliates and/or subsidiaries (to which Lakeland is not a signatory), in accordance with Louisiana Revised Statute 22:2018, custom, business practice, and/or other applicable law.