ROLAND L. BELSOME, Judge.
|, Mary Ellen Carter filed suit against the Orleans Parish School Board (“School Board”) alleging that she was inadequately paid since October 1996. After a two-day bench trial, the trial court rendered judgment in favor of Mrs. Carter awarding her back pay of $35,398.88, plus costs, together with legal interest from date of judicial demand. This appeal followed.
Mrs. Carter began her employment with the School Board in 1994 in a Secretary I position for the Drug Free Schools Department. In 1996, Mrs. Carter applied and secured a Secretary I position working for Sharon Bell, the Director of Educational Technology.
Under Sharon Bell’s supervision, Mrs. Carter claims she began performing the job responsibilities of an Executive Secretary without any change in her salary or job title. Mrs. Carter contends she continued to perform those duties at her Secretary I pay scale through December of 1997.
Mrs. Carter also claims that in 1998, she began taking on additional work assignments in connection with preparations for Y2K. She states that her duties at pthat time equated to the job responsibilities of an Administrative Assistant. The duties she was performing at that time included, but was not limited to, coordinating computer classes, attending meetings for Sharon Bell, as well as typing, and answering the phones. Mrs. Carter claims that her duties remained that of an Administrative Assistant until Sharon Bell took a leave of absence from Director of Educational Technology in 1999.
Leroy Prout became Mrs. Carter’s supervisor after Sharon Bell took her leave. Mrs. Carter alleges that she continued to perform Administrative Assistant duties for Leroy Prout until July 2000. Then in *225 August of 2000, she began acting in the capacity of a Software Resources Coordinator. Mrs. Carter maintains that she continued to perform those duties until they were removed from her assigned responsibilities in November of 2001.
Mrs. Carter alleges that for almost five years she performed duties and responsibilities at levels higher than that of her pay grade. She further asserts that during that time she was continuously promised a promotion and pay raise. Although each of her supervisors sought to have her position reclassified and her pay increased, the process was never finalized. As a result, Mrs. Carter argues that her reliance on promises from her superiors was detrimental to her while unjustly enriching the School Board. Thus, she seeks to recover retroactive pay for her job performance during that time.
Under Louisiana law, a claim of detrimental reliance must meet three requirements: (1) a representation by conduct or word; (2) justifiable reliance; and | ⅞(3) a change in position to one’s detriment because of the reliance. Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc., 2003-1662 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, writ denied, 2004-0969 (La.6/25/04), 876 So.2d 834.
Sharon Bell’s deposition testimony supports all of Mrs. Carter’s assertions regarding her work performance for the time period of October 1996 until November 1999. Sharon Bell said that in October 1996, Mrs. Carter began scheduling programs and meetings associated with the Technology Department. In connection with the scheduling she would have to coordinate the security and insurance prior to the event. Then Mrs. Carter would have to maintain records of what transpired during the meetings. Mrs. Carter performed these duties in addition to the clerical duties of her Secretary I position.
Sharon Bell also testified that Mrs. Carter superseded those duties in January 1998 when the Y2K program went in to full gear. At some point Mrs. Carter became responsible for payroll for several departments as well as consultants. She was also given assignments to attend meetings for Sharon Bell and report back to Sharon Bell. She stated that she relied on Mrs. Carter’s performance of those enhanced job duties. She also confirmed that she continuously assured Mrs. Carter that her position and pay grade would be reclassified and she would secure retroactive pay for her past performance.
Sharon Bell explained that she had numerous conversations with Mrs. Carter representing to her that she intended to have her position reclassified to an Executive Secretary. She explained to Mrs. Carter that she had submitted the | ¿required forms and was anticipating budget approval. Based on these representations Mrs. Carter continued to perform the job assignments given to her by Sharon Bell.
Sharon Bell presented Mrs. Carter’s reclassification to the Chief Financial Officer at the time, Reginald Zeno, and also to the Chief Executive Officer at that time, Dr. Morris Holmes. Sharon Bell stated that Reginald Zeno and Dr. Morris Holmes agreed with the reclassification telling her to submit it for budget approval. The request was submitted to the budget committee. The committee never denied the request and always led Sharon Bell to believe that they were working on its approval. Sharon Bell continued the pursuit of obtaining proper compensation for Mrs. Carter’s work responsibilities until December of 1999 when she took her leave of absence.
Even after Sharon Bell was on leave of absence she followed up on those promises *226 and reassurances by writing a letter to the Executive Director of Human Resources at the time, Alvi Anderson Mogilles. In the letter dated October 8, 2001, Sharon Bell asserted that Mrs. Carter was due retroactive pay for her job functions from October of 1996 to December of 1997. Sharon Bell classified Mrs. Carter’s performance as that of an Executive Secretary 7 and then from January 1998 to December 1999 as an Administrative Assistant Step 7.
Chief Information Officer Leroy Prout succeeded Sharon Bell and remained in that position for approximately fifteen months. He expressed to Mrs. Carter his desire for her to be his Executive Secretary. Mrs. Carter continued to perform the Usame functions for Leroy Pratt that she performed for Sharon Bell through July 2000. He recommended retroactive pay for Mrs. Carter based on the duties she performed while under his supervision from December 1999 until the end of July 2000. She was eventually compensated with $846[1] in response to Leroy Prout’s request for the retroactive pay.
The record indicates that on August 1, 2000, Leroy Prout made a formal request to create the position of Coordinator, Software Resources. He informed Mrs. Carter that he wanted her to fill that position, which would come with a pay increase. The evidence shows that based on the representations of Leroy Prout regarding the coordinator’s job, Mrs. Carter began performing the duties associated with that job description. At all times Mrs. Carter relied on the promises of promotion while complying with what was requested of her. The School Board approved the creation of Coordinator, Software Resources and Mrs. Carter applied for the position. However, Mrs. Carter was never interviewed for that position and there is no indication that the position, though created, was ever filled. Then in early 2001, Leroy Prout ended his employment with the School Board.
Joe Bekeris testified that he was the Chief Administrative Officer of the School Board from December 1999 until July 2001. During that time, he provided the then School Board Superintendent, A1 Davis, with a memorandum asking for resolution of Mrs. Carter’s long standing discrepancy regarding her job classification. He described Mrs. Carter’s work performance as “flawless.” He | ¿further stated that “she was very dedicated, a team player, I felt that she was extremely honest and very forthcoming.” The matter was passed on to legal counsel. Shortly thereafter Joe Bekeris left the School Board. The issue was not resolved.
Dr. Alonzo Luce succeeded Leroy Prout as Chief Information Officer. It was Dr. Luce who finally removed the expanded duties from Mrs. Carter’s assigned work responsibilities.
The standard of review for factual findings by the trial court is one of manifest error or clearly wrong. An appellate court may not set aside a trial court’s finding of fact unless it is clearly wrong. Conflicts in testimony are resolved using reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even if the appellate court may believe its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The argument asserted by the School Board focuses not on whether the representations of reclassification or a pay raise were made but was it reasonable of Mrs. *227 Carter to rely on those representations. The School Board relies on Mrs. Carter’s understanding of how the School Board creates new positions and the process in which employees are reclassified.
Mrs. Carter acknowledges she was aware of how job positions were reclassified. She also acknowledged that both Sharon Bell and Leroy Prout informed her that they were processing the necessary paperwork to remedy Mrs. Carter’s situation. This was done not only to have her properly classified based on 17her responsibilities, but also to secure retroactive pay for her past performance. Furthermore, Mrs. Carter was under the impression her supervisors had the authority to have her reclassification approved. Mrs. Carter knew that Sharon Bell and Leroy Prout received verbal support from the Superintendent, Chief Financial Officer, and Chief Administrative Officer. However, they could never get final approval.
The evidence clearly indicates that throughout the five-year period in question the School Board’s Human Resources Department was well aware that Mrs. Carter was performing duties outside the scope of her Secretary I classification. As a matter of fact, the Human Resources Department conceded just that when they paid Mrs. Carter $846, stating that Mrs. Carter “supported the office of Chief Information Officer from December 1999 through August 2000.” That payment supports Mrs. Carter’s argument that it was common practice for the School Board to have interim assignments, which allowed employees to get paid for working outside of their job description. She undoubtedly believed she would be paid for her efforts.
It is obvious to this court that Mrs. Carter was a victim of the School Board’s administrative changes and bureaucracy. Given the facts of this case, the School Board’s argument that Mrs. Carter’s reliance was unreasonable is absurd. If the School Board was not going to raise Mrs. Carter’s pay to reflect her job duties they should have reduced her job duties. Although, that was eventually [«done, Mrs. Carter deserves to be compensated for the five years that the School Board benefited from her job performance.
Lastly, the School Board contends that the trial court miscalculated the damages. Based on the evidence in the record this court calculates the damages as presented at trial as follows:
1996 - $ 1,444.00
1997 - $ 4,238.00
1998 - $ 8,942.96
1999 - $ 8,942.96
2000 - $ 8,942.96
2001 - $ 1,719.80
Total $34,230.68
Less 846.00 - Prior Payment
$33,384.68
Therefore, the trial court’s judgment is amended to reflect the proper calculation of $33,384.68 in general damages, plus costs, together with legal interest from date of judicial demand.
For the reasons discussed the trial court’s judgment is amended and affirmed.
AMENDED AND AFFIRMED.
ARMSTRONG, C.J., concurs.

. This is the amount testified to by Judy Haines who at the time of the payment was Director of Human Resources.