PITMAN, J.
11 Defendant-Appellant Natosha L. Mann appeals the trial court’s judgment in favor *858 of Plaintiffs-Appellees Roy L. Flippo and Robert C. Treadway. For the following reasons, we affirm.

FACTS

On February 13, 2014, Plaintiffs filed a petition for mandatory injunctions alleging that they and Ms. Mann are owners of lots located in Ranchland Acres Subdivision in DeSoto Parish. These lots are subject to restrictions (“the Restrictions”), including the following:
DWELLING SIZE.... All main structures shall be constructed in the subdivision,;and-no main structures shall be moved to a lot therein.
⅝ ¾5 . ⅜ ⅜*
TEMPORARY STRUCTURES. No structure of temporary character, trailer, basement, tent, shack, garage, barn or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently, (except that trailers may be used as a residence in all of Blocks M, R, S, DD and Lots 6-14, both inclusive, Block EE).,
Plaintiffs alleged that Ms- Mann resided in .a mobile home[1] located on Lot 12, Block N, of Ranchland Acres Subdivision, Unit 1 (“the Property”), in violation of the Restrictions. They stated that Ms. Mann was given written notice of a demand to remove the mobile home and was given ample opportunity to comply with the Restrictions, but that she failed to comply. Plaintiffs argued that they1 were entitled to a mandatory injunction ordering Ms. Mann to bring the Property into compliance with the Restrictions, i.e., that she remove the mobile home within 30 days.
|2On April 11, 2014, Ms. Mann filed a peremptory exception of nonjoinder for failure to join indispensable party. She stated, that, on May 31,, 2013, R.H. Lending, Inc. (“R.H. Lending”) was granted a mortgage and security interest on the Property, including the land and the residence,,, and that it should be joined as a party so it can protect its financial and security interest in the Property, which would be “virtually wiped out” if the trial court granted the injunction.
On April 28, 2014, Plaintiffs filed an answer to peremptory exception, alleging that R.H. Lending’s security interest in the Property is a personal right and obligation effective only between it and .Ms. Mann. They argued that, because of the absence of rights or obligations between Plaintiffs and R.H. Lending, R.H, Lending has no cause of action and should not be joined as a party in this case.
During a- hearing on April 28, 2014, Plaintiffs filed an amended petition for mandatory injunction to include R.H. Lending as a party. The trial court determined that R.H. Lending should receive Mennonite notice and found that the exception of nonjoinder was moot. On November 10, 2014, Plaintiffs filed an unopposed motion to dismiss codefendant R.H. Lending.
On November 17, 2014, Ms. Mann filed an answer to Plaintiffs’'petition, alleging that, if any of the Restrictions applied to the Property, they have been abandoned or waived. She stated that Plaintiffs failed to mitigate damages and are not entitled to relief as a result of their failure. She also | ^contended that' the Restrictions are vague and ambiguous and, thus, unenforceable. ' '
On November 19, 2014, Ms. Mann filed a peremptory exception of nonjoinder for failure to join indispensable party; She stated that ‘R.H. Lending as mortgagee *859 was made a party to the case; but, on October 31, 2014, it assigned its mortgage to First Guaranty Mortgage Corporation (“First Guaranty”). She argued that First Guaranty should be made a party so that it can protect its financial and security interest in the Property.
A trial was held on November 19, 2014. The trial court denied the exception of nonjoinder, noting that First Guaranty had sufficient notice and that its absence would not impair or impede its ability to protect its interest. Plaintiffs testified during the trial on their petition for an injunction. Mr, Treadway testified that he purchased property in Ranchland Acres in 1976 and is very familiar with the Restrictions. He stated that Ms. Mann lives in a trailer on a lot that is subject to the Restrictions that forbid trailers. He testified that he became aware of the violation of the Restrictions in March 2013 when he noticed a portion of the Property had been cleared and a trailer had been placed thereon. He stated that he approached the owner of Apee, LLC (“Apee”),' the company that placed the trailer on the'Property and then sold it to Ms. Mann, and advised him that a trailer could not be placed on that lot. He later noticed that electricity had been connected to the trailer and a truck was parked on the Property. He stated that he never met Ms. Mann, but that she was sent a demand letter less than a month after he noticed the violation of the Restrictions. He further stated that trailers 14are allowed on some specific lots in the subdivision and that trailers are also permissible provided they are not lived in. Mr. Flippo testified that he purchased land in Ranchland Acres Subdivision in’ 1972 and is aware of the Restrictions. He stated that he had never met Ms. Mann, but believes she is in violation of the Restrictions. He further stated that he became aware of the violation when “they started clearing the property and moving in.” He noted that trailers • are allowed ,on certain lots, but that .the Property is not one of those lots. The trial court found that Plaintiffs proved there was a violation of the Restrictions and directed Ms. Mann to cure the violation by removal of the trailer within 30 days, . -
On November 21, 2014, the trial court filed a judgment, determining that Ms. Mánn was in violation' of the Restrictions and ordering her' to remove the trailer from the Property within 30 days of the ruling.
Ms. Mann appeals.

DISCUSSION

Peremptory Exception of Nonjoinder

In her first assignment of error, Ms. Mann argues that the trial court erred in denying her peremptory exception of nonjoinder of the mortgagee of her property. She contends that First Guaranty should have been joined as a party because the granting of the injunction would destroy all or most of the value of its security interest in the Property. She n'otes that the trial court’s denial of the peremptory exception regarding First Guaranty is inconsistent with the previous joinder of the prior mortgagee, R.H. Lending. • She argues that the judgment requiring her to remove the mobile home from |sthe Property is an absolute nullity and requests that this court on appeal declare the trial court’s judgment a nullity. .
Plaintiffs argue that the trial court did not err in denying Ms. Mann’s peremptory exception of nonjoinder because First Guaranty received notice of the suit from their counsel and1 because its mortgage does not extend to Ms. Mann’s trailer. Plaintiffs contend that, because Ms. Mann did not comply with the procedure to immobilize her home pursuant to La. R.S. *860 9:1149.4(A), her trailer is not an immovable; • and, therefore, First Guaranty’s mortgage on the Property does not extend to her trailer. ■ They assert that, because there is no evidence that First Guaranty’s ■mortgage extends to the trailer; Ms. Mann has not established that First Guaranty has any interest that could be impaired by the removal of the trailer from the Property. Plaintiffs,further argue that, even if Ms. Mann had established that First Guaranty’s mortgage extended to her trailer, its removal from the Property would not impair the mortgage pursuant to La. R.S. 9:1149,6(A).
La. C.C.P. art. 641 states:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims, an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair, or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obli-gationSi ,, ■ ■
This court notes- that, although -Plaintiffs’ arguments regarding whether First Guaranty’s mortgage extends to the mobile home may have | fimerit, we decline to examine this issue because that decision is not necessary to determine whether the mortgagee is an indispensable party. Assuming that First Guaranty’s mortgage extends .to. both the Property and the mobile home,[2] First Guaranty is not an indispensable party pursuant to La. C.G.P. art. 641. Complete relief can be accorded in First Guaranty’s absence, and First Guaranty’s absence will not impair or impede its ability to protect" its alleged interest in the Property and mobile home. First Guaranty received notice of the proceedings in this case and has other recourse to protect its alleged interest.
Accordingly, this assignment of error lacks merit.

Plaintiffs Failed to Take Prompt Action

In her second assignment of error, Ms. Mann argues that the trial court erred in declining to find that Plaintiffs operated with unclean hands. She contends that, because Plaintiffs did not take action against Apee when they initially observed violations of the Restrictions, they have unclean hands and are not entitled to in-junctive relief.
Plaintiffs argue that the trial court did not err in rejecting Ms. Mann’s argument that they acted with “unclean hands,” They contend that they did inform Apee that the Property was a non-trailer lot and that their counsel promptly sent a demand letter to Ms. Mann after she moved into the trailer.
La. C.C. art. 781 sets forth the time period to file an action for injunction on account of a violation of a building restriction and States:
|7No action for injunction or for damages on account of the violation of a building restriction may be brought after two years from the commencement of a noticeable violation. After - the lapse of this period, the immovable on which the violation occurred is freed of the restriction that has been violated.
*861 -In this case, Plaintiffs both testified that they first noticed the violation of the Restrictions when they observed Apee move the mobile home onto the Property in March 2013. Mr. Treadway stated that he informed Apee’s owner of the violation. Ms. Mann noted that she acquired the Property, including the mobile home, from Apee on May 31, 2013. A demand letter was sent to Ms. Mann ,on July 1, 2013. Plaintiffs filed suit pn February 14, 2014, less than one year after they first noticed the violation. Plaintiffs timely filed suit within two years from the commencement of the noticeable violation. Therefore, they do not, as suggested -by Ms. Mann, have unclean hands that prevent them from pursuing an injunction.
Accordingly, this assignment of error lacks merit.

Violation of Property ' Restrictions

In her third assignment of error, Ms. Mann argues that-the trial court erred in finding that the Property violated the Restrictions. She notes that she lives in a new, well-maintained mobile home on a street where there are numerous other mobile homes. Shé distinguishes mobile homes from trailers and states that modern, immobilized mobile homes are not temporary. She also points out Plaintiffs’ “ludicrous” construction of the Restrictions, i.e., that she may have a mobile home on her lot if shé does not live in it, but she may not have a mobile home on her lot if she lives in it. She contends that this absurd construction illustrates why the Temporary |sStructures Restriction is inapplicable. She also argues that the Dwelling Size Restriction is inapplicable because it conflicts with the Temporary Structures Restriction. She states that the Dwelling Size Restriction does not except any lots from its provision; and, therefore, all of the lots that permissibly have mobile homes placed on them are in violation of the provision. She also argues that, because the Restrictions are inapplicable in this -case, the trial court’s judgment should be reversed. -
Plaintiffs argue that the trial court did not err in finding that Ms. Mann violated the Restrictions, They contend that she does not persuasively argue that her mobile home is neither a temporary structure nor a trailer within the meaning of the Restrictions. They state that she did not present any evidence regarding the nature of the structure or the degree to which the structure was immobilized; and, therefore, she failed to preserve this.issue for appellate review. They further argue that Ms. Mann’s trailer, the main structure located on the Property, was moved onto, rather than-constructed on, the Property, which violates the Dwelling Size Restriction. They contend that her argument that the Dwelling Size Restriction and Temporary Structures Restriction conflict is- misplaced because the lots on which trailers are allowed are also excepted from the Dwelling Size Restriction.
Budding restrictions are governed by Louisiana Civil Code articles 775 through 783. Building restrictions are charges imposed by the owner of an immovable iii pursuance of a general plan governing building standards, specified uses and improvements. La. C.C. art. 775. Doubt as to the Inexistence, validity or extent of building restrictions is resolved in favor of the unrestricted use of the immovable. La. C.C. 783. The words of a contract must be given their generally prevailing meaning.' La. C.C. art. 2047. Words of art and technical terms must be given their technical meaning when the ebntract involves a technical matter.' Id. Each provision in a contract must be interpreted in light of the other provisions so that each, is given the meaning, suggested by the contract as a whole. La. C.C. *862 art,2050, A trial court’s factual finding that certain conduct violates building restrictions is subject to manifest error review. Jackson Square Towne House Home Ass’n, Inc. v. Hannigan, 38,239 (La.App.2d Cir.3/3/04), 867 So.2d 960.
In the case sub judice, the trial court did not err in determining that Ms. Mann violated the Restrictions. The Dwelling Size Restriction clearly states that “[a]ll main structures shall be constructed in the subdivision, and no main structures shall be moved to a lot therein.” The evidence presented at trial demonstrates that Ms. Mann’s mobile home was moved onto the Property and was not constructed on the Property. Mr. Treadway testified that the trailer was “brought in” and that Apee “put” -the trailer on the Property. He stated' that Ms. Mann’s trailer violated the Restrictions because the main structure cannot be moved onto the Property and “has to be built on site, new materials.” Mr. Plippo also testified that the trailer was moved onto the Property.
The Temporary Structures Restriction forbids a “structure of temporary character” or “trailer” from “be[ing] used on any lot at any time |inas a residence either temporarily or permanently.” Throughout these proceedings, Ms., Mann’s residence was referred to as both a “mobile home” and a “trailer.” In Head v. Gray, 41,290 (La.App.2d Cir.8/23/06), 938 So.2d 1084, writ denied, 06-2353 (La.12/15/06), 945 So.2d 690, this court discussed Louisiana jurisprudence regarding disputes over building restrictions containing the exact or closely similar language of the Temporary Structures Restriction. This court examined whether the term “trailer” in-eludes the concept of a “mobile home” and stated:
From our review of the law and juris- ■ prudence, we find various expressions attempting to define the term mobile home. For example, in 1975, ... the Third Circuit Court of Appeal in [Mouille v. Henry, 321 So.2d 377 (La.App. 3d Cir.1975) ], considered Webster’s definition for mobile home as “a trailer that is used as a -permanent- dwelling.” Mouille at 378. At the same time of that ruling, La. R.S. 51:911.22, which was 'included in Louisiana’s Uniform Standards Code for Mobile Homes, provided a definition as follows:
(5) “Mobile home” means a factory-assembled ■ structure or ■ structures equipped with the necessary connections and made so as to be readily movable over roads and highways as a unit or units, which exceeds eight body feet in width or is thirty-two feet or more in body length and is designed for occupancy with or without a permanent foundation. It may consist of one or more units which can be telescoped when towed and expanded later for additional capacity, or may consist of two or more units, separately towable but designed to be joined into one integral unit.
Act 281 of 1974. Later, this definition in the Revised Statutes was amended several times. At one point, “mobile home,” “manufactured home” and “manufactured housing” were used together in La. R.S. 51:911.22 and said to be interchangeable. Act 576 of 1984. The present version of the statute defines mobile home differently from manufactured home. , La. R.S. |n51:911.22.[3] *863 Finally, in our law pertaining to highway regulations, La. R.S. 32:1 has its own definition of “mobile home” placing emphasis on the “trailer or semitrailer” design of the structure- which “is equipped for use as a conveyance on highways.” :
⅜ ⅜ ⅜
Contrary to the plaintiffs’ argument, the term “mobile home” does not have such a generally prevailing meaning as to clearly include all forms of manufactured housing, hence the need to detail the scope of its meaning as illustrated by varying definitions in our statutes. Another reasonable and narrower interpretation ‘might recognize the mobile home’s origins as a trailer with a. tow bar, comprising a single self-contained living area and designed to sit on its own axle. Our ruling in [Smith v. DeVincent, 322 So.2d 257 (La.App. 2d Cir.1975)] had little difficulty recognizing that the single unit mobile home in that case was essentially a “trailer,” which was the only term utilized in the early version of the “temporary structure” restriction which Smith addressed. The court observed:
By whatever name, these homes com vey to reasonable minds a rather elongated structure (10 to 14 feet in width by 40 to 80 feet in length), capable of being towed on the highways, with axles and wheels attached to the frame of the structure. The very name mobile or trailer conveys this meaning. The overall appearance, as distinguished from exterior decor, of one mobile home is not grossly dissimilar to another, and in the eyes of reasonable men, they all “look alike.” We also take note that occasionally they may be immobilized on a particular location, but nonetheless, remain capable of being, mobilized without too much effort and expense. They are not so much “constructed” or “asserm bled” even in a .small part on the location the owner desires .but. are “connected” to sewerage and utilities. Indeed, one of their greatest selling points is their complete containment, ease of connection, and mobility.
Smith v. DeVincent, supra at 263.
The Mutters’ home [i.e., the residence at issue in Head ] was assembled; its roof and attic constructed; and its re-mobilization would now require much effort and expense. Though double-wide trailers requiring assembly existed at the time of Smith (see Act 281 of 1974), this court’s definitional description plainly suggests that modern manufactured housing units designed for placement on a foundation by a crane and requiring roof construction would not be included in its 1975 view of the trailer/mobile home.
Moreover, as seen by the-detailed definitions for “mobile, home” utilized in the above Louisiana statutes, careful drafting avoids' the question of whether a mobile home with a permanent foundation is still to be considered a mobile home. That question is reasonable, and the question raises doubt. In [Mitchell v. Killins, 408 So.2d 969 (La.App. 2d Cir.1981) ], the subdivision restrictions were clear that an immobilized mobile home would not be considered as an acceptable permanent residence because they further provided that every residence also be constructed on site. Other restrictions specifying aesthetic *864 features of a residence could also effectively prevent most manufactured housing in a subdivision if that is indeed a goal for the subdivision plan. .
(Emphasis added).
This court in Head, supra, also emphasized the importance of considering the entire framework for the subdivision’s “general plan,” as set forth in La. C.C. art. 775, and determined that the residence at issue was not a temporary structure. The case sub judice is distinguishable from Head, supra, because of the inclusion of the Dwelling Size Restriction, which is not included in the restrictions at issue in Head, supra. The case at bar is more akin to Mitchell, supra, which was discussed and distinguished supra in Head. The restrictions at issue in Mitchell, supra, prohibited the use of temporary structures as residences and prohibited any existing buildings from being moved onto a lot in the subdivision. This court in Mitchell, supra, determined that “the placing of the house trailer or mobile home on their lot ... constituted a violation of a ‘building’ restriction and the occupation of the structure as a dwelling ... violated a ‘use’ restriction.” ’
When considering the general plan of the Restrictions, it is clear that the placement of the mobile home/trailer on the Property and Ms. Mann’s residing in the home violated the Restrictions. The Tem-porn-y Structures Restriction notes that trailers may be used as residences on specified lots. This exception to the Restrictions emphasizes the intent of the Restrictions to govern the use of the lots in the subdivision. The fact that the Property is not one of the lots specifically excepted from the Restrictions reinforces the intent of the Restrictions that a main structure not be moved on to the Property and that a temporary structure such as a trailer or mobile home not serve as a residence. The remedy of an injunction requiring the removal of the mobile home from the Property also emphasizes the temporary and mobile nature of the residence. La. C.C. art.- 779. Additionally, no evidence of the mobile home/trailer’s permanency was introduced at trial.
Further, the Dwelling Size Restriction does not conflict with the Temporary Structure Restriction. Prior to listing specific provisions, the Restrictions state:
From this date forward, the. property hereinafter described shall be held, owned and conveyed subject to the following reservations, restrictions and covenants:
All of Ranchland Acres Unit 1, a subdivision of DeSoto Parish, Louisiana, as per map recorded in Conveyance Book 261 at pages 543, 545 and 547 of the Records of DeSoto Parish, Louisiana, EXCEPT Lots Five (5) and Six (6) Black B; Lots One (1) and Two (2) Block C; all of Blocks M, R, |14S, DD and Lots Six (6) through Fourteen (14), both inclusive, Block EE.
This list of excepted lots is repeated in the Temporary Structures Restriction as follows:
No structure of temporary character ... shall be used on any lot at any time as a residence either temporarily or permanently, (except that trailers may be used as a residence in all of Blocks M, R, S, DD and Lots 6-14, both inclusive, Block EE). ....
Therefore, the lots excepted from the Temporary Structure Restriction are generally excepted from the Restrictions as a whole, including the Dwelling Size Restriction.
The trial court did not err when determining that the. presence of the mobile home/trailer on the Property violates the *865 Restrictions. Accordingly, this assignment of error lacks merit.

Removal of Mobile Home

In her fourth assignment of error, Ms. Mann argues that the trial court’s judgment erroneously requires removal of the mobile home from the Property. She contends that the removal of the mobile home is not required to comply with the Restrictions because a mobile home is permissible as long as no one resides in it.[4] She argues that, as long as she does not reside in the mobile home, she is not in violation of the Restrictions. Therefore, Ms. Mann contends that the portion of the trial court’s judgment requiring the removal of the mobile home should be stricken.
Plaintiffs argue that the trial court did not err in ordering Ms. Mann to remove the trailer from the Property.. They contend that Ms. Mann’s 1 ^argument that she does not violate the Restrictions if she does not live in the trailer ignore^ her violation of the Restrictions, specifically the Dwelling Size Restriction. Therefore, they assert that the trial court did not err in ordering that she remove the trailer from the Property.
Building restrictions may be enforced by mandatory and prohibitory injunctions without regard to the limitations of Article 3601 of the Code of Civil Procedure. La. C.C. art. 779. This court in Mitchell, supra, explained:
It is axiomatic that a valid property restriction is enforceable by injunctive relief, including a mandatory injunction directing removal of the objectionable structure. Chapman v. Fisher, 370 So.2d 162 (La.App. 3rd Cir.1979). Otherwise, the purpose of a subdivision restriction would be completely thwarted every time the violation became an accomplished fact.
Although Ms. Mann’s .argument that removal of the mobile home is not necessary may have some merit regarding the Temporary Structure Restriction, see Head, supra, this argument is not persuasive regarding the Dwelling Size Restriction, which requires that all main structures be constructed in the subdivision and that none be moved onto a lot. See Mitchell, supra. As discussed supra, the evidence presented demonstrates'that Ms. Mann’s mobile home was moved onto the Property and was not constructed on the Property. Therefore, the presence of the mobile home on the Property violates the Restrictions, and the trial court did not err in granting the injunction and ordering that the mobile home be removed from' the Property.
Accordingly, this assignment of error lacks merit.

^CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in favor of Plaintiffs-Appellees Roy L. Flippo and Robert C. Treadway and against Defendant-Appellant .Natosha L. Mann. Costs of this appeal are assessed to Defendant-Appellarlt Natosha L. Mann.'
AFFIRMED.

. As the issue of whether the term "trailer” includes the concept of "mobile home” is addressed in this opinion, both terms will be used to reflect the word choice of the parties.

. First Guaranty's mortgage includes the following description of the Property: "Lot 12, Block N. Ranchland Acres, Unit! ... together with all buildings and improvements located thereon and belonging therein.”

. La. R.S, 51:911.22(8) states:
"Mobile home" means a factory-built, residential dwelling unit built to voluntary standards prior to the passage of the National Manufactured Housing Construction and Safety Standards Act of 1974. This term includes and is interchangeable with the term "house trailer”, but.does;not include *863 the term "manufactured home”, as only manufactured homes are built to federal construction standards.

. Ms. Mann notes that this argument may seem nonsensical, but that it is •based on positions taken by Plaintiffs and illustrates why the-Restrictions cannot be enforced against her.