Judge Joy Cossich Lobrano
11 This appeal arises from a dispute between condominium unit owners and their condominium association regarding the operation of short-term rentals. Vanderbilt New Orleans, LLC ("Vanderbilt”), The Penthouse at Jax, LLC (“PAJ”), and New Jax, LLC (“New Jax”) appeal the district court’s November 10, 2015[1] judgment granting New Jax Condominiums Association, Inc. (“the Association”)[2] a permanent injunction against PAJ, Vanderbilt, and New Jax,- (together, “the Weber entities”) and adjudicating the Weber entities liable in solido for $250,991.24 in damages. Finding that the district court did not manifestly err,, we affirm the portion of the judgment issuing a permanent injunction against .the Weber entities. Finding that the district court erred in adjudicating New Jax liable in solido for damages.with PAJ and Vanderbilt,- we reverse and vacate the portion of the judgment awarding monetary damages and remand the case for a determination of the amount of damages owed by PAJ and Vanderbilt.
12Earl Weber Jr. (‘Weber”) is the sole member of PAJ, and makes all operational decisions for PAJ. PAJ owns two units in the condominium complex managed by the Association, one of which (the “Queen Suite”) it uses for short-term rentals. Weber is also a member of Vanderbilt, and makes the majority of decisions regarding Vanderbilt’s operations. Vanderbilt conducts no business other than owning a *474 condominium in the Association’s complex (“Unit-B”)- and engaging in short-term rentals through Unit B. Weber is also one of the two members of New Jax, and, at all times relevant to the issues raised in this appeal, was the individual directing the operations of New Jax. New Jax was formed to act as developer of the condominium complex, and went dormant for a period after the complex was completed.
In 2009, PAJ and Vanderbilt began leasing the Queen Suite and Unit B on a short-term rental basis. Four years later, in January of 2014, a new president, A.J. Roy (“Roy”) was elected to lead the Association’s board > of directors (the “Board”). During his tenure, Roy received, numerous complaints regarding the operation -of short-term rentals within the condominium complex. These complaints included that short-term tenants had harassed unit owners, had trespassed into unit owners’ homes, and had provoked violence that prevented-unit, owners from being able to use and enjoy their property. As a result, the Board met with Weber. However, the short-term rentals continued.
After the meeting failed to produce favorable results, on June 30, 2014, the Board unanimously recognized that short-term rentals were prohibited by law. The Board then circulated a letter to all owners within the complex, stating that short Uterm rentals were prohibited by law[3] and not tolerated by the complex. The letter specifically stated that “all Unit Owners must stop using their units for rentals for periods of less than 60 days” and that “all Unit Owners must stop using their Units for rentals for periods of less than 60 days by September 16, 2014.” Vanderbilt and PAJ admit that they ignored the letter and continued with short term rentals.
Another notice was sent. Throughout this time, the Board continued to receive complaints with respect to issues concerning short-term tenants. As a result, the Board unanimously approved an amendment to the bylaws (“Bylaw 5.19”) specifically prohibiting the operation of short term rentals within the complex, and set it for a vote by the unit owners. Before Bylaw 5.19 was voted upon by the unit owners, Weber had Vanderbilt lease the Queen Suite and Unit B to his previously dormant company, New Jax, for the purpose of continuing the short-term rentals.[4] Weber signed the lease for both lessor Vanderbilt and lessee New Jax. The lease became effective January 1, 2015,
On January 15, 2015, a unit owner meeting took place. Before a vote was held with respect to Bylaw 5.19, an annual election of the Association’s three-member board of directors (the “Board”) was held. Mr.' Kenneth Lobell (“Lobell”)[5] Land Mr. Gregory *475 Lala (“Lala”) were elected as new members of the Board. Roy was reelected . to the Board, and remained president. Initially, Bylaw 5.19 did not pass. There was some confusion regarding the vote, as Lo-bell stated that he filled out his ballot incorrectly. After alerting the room that he incorrectly filled out his ballot, Lobell 'was allowed to clarify his vote, which resulted in the new bylaw passing.[6] The final result was a 75.5810% majority in favor of Bylaw 5.19, which reads:
It is strictly prohibited that any' Unit Owner or tenant (pursuant to a duly authorized and approved lease) use his/ hers/its Unit for any overnight rental, bed and bréakfast, guest house, hotel, or transient purpose in which any party received payment or anything of value for said use. The Unit Owner and tenant/occupant breaching this provision, after notice and a hearing before the Board, shall be liable jointly, severally, and in solido to the Association for all amounts received or the value received, costs, expenses, and legal fees, all of which shall be subject to the imposition of a lien as provided in the Declaration and By-Laws and the Act. In addition to the above, the Association shall be entitled to injunctive relief against any violating party.
After the passage of Bylaw 5.19, it came to the Board’s attention that the Weber entities were still operating short-term rentals. On March 9, 2015, the Board issued a written notice to PAJ and .Vanderbilt ordering them to cease their operation of short-term, rentals, and . scheduled a hearing for March 27, 2015, to discuss violations of Bylaw 5.19. ‘During the hearing, Vanderbilt admitted that it had used its property for short-term rentals, but argued that it had not violated any bylaws. Instead, Vanderbilt asserted that prior to January 1, 2015, it had complied With the notice requirement for short-term leases, pursuant to Article 5.18.[7] | ^Furthermore, Vanderbilt maintained' that its long-term léase agreement with New Jax was not subject to the bylaws and/or was protected by the “developer exclusion” in Article 5.18. However, despite .these arguments, the Board unanimously determined that PAJ and Vanderbilt had violated and were continuing to violate Bylaw 5.19, and therefore, ordered PAJ and Vanderbilt to cease and desist from using their units for short-term rentals. Despite this, New Jax continued to use its leased property for short-term rentals.
Because of these continued actions, the Association filed a. lawsuit seeking an injunction and damages against PAJ and Vanderbilt. A preliminary injunction was issued on June 25,2015, enjoining PAJ and Vanderbilt' from continuing their short-term rentals. Importantly, the preliminary injunction also restricted “those persons in active concert or participation with them” from operating the short term rentals.. The Weber entities ignored the injunction, and New Jax continued to use its leased property for short-term rentals.
*476 New Jax intervened in the lawsuit on July 21, 2015. On August 12, 2015, the Weber entities filed an Exception of Prescription, alleging that the lawsuit was untimely because the Association had been aware of Vanderbilt’s short-term rental actions since 2009. The district court denied the exception, and the matter went forward to trial on November 9 and 10, 2016, On November 10, 2016, the district court rendered judgment. The district court found that the Weber entities were in violation of Bylaw 5.19, and ordered a permanent injunction barring the Weber entities from participating in any short-term rental activity. The district court also | r,found that damages for the Weber entities’ violation of Bylaw 5.19 amounted to $250,991.24, equal to the amount of revenue that the Weber entities earned from the operation of short-term rentals dating from January 15, 2015 to September 14, 2015. The district court adjudicated the Weber entities liable in solido for those damages.[8]
This appeal timely follows.
Errors Assigned by PAJ and Vanderbilt
I. Conflict of Interest
First, PAJ and Vanderbilt allege that the district court erred by failing to make a factual finding that members of the Board had conflicts of interest that made the Board’s actions improper. PAJ and Vanderbilt argue that because Lobell is involved in separate litigation against Weber, and Lala has stated that Weber made misrepresentations to him when selling him his condominium,[9] Lobell and Lala acted in bad faith by participating in the enactment and enforcement of Bylaw 5.19.
In support of this argument, PAJ and Vanderbilt cite only La. R.S. 12:1-830(A), which reads, “[ejach member of the board of directors, when discharging the duties of a director, shall act in good faith and in a manner the director reasonably believes is in the best interests of the corporation.” PAJ and Vanderbilt further argue that “[t]he evidence in the record shows clearly that both Kenneth Lobell and another current member of the Association’s Board of Directors, Gregory Lala, had 17conflicts of interest regarding Earl Weber and his short-term , rental activity, and therefore acted in bad faith....”
Regarding conflicts of interest, La. R.S. 12:1-861 reads:[10]
A. A transaction effected or proposed to be effected by the corporation, or by an entity controlled by the corporation, may not be the subject of any form of relief, or give rise to an award of damages or other sanctions against a director of the corporation, in a proceeding by a shareholder or by or in the right of the corporation, on the ground that the director has an interest respecting the transaction, if it is not a director’s conflicting interest transaction.[11]
*477 B. A director’s conflicting interest transaction may not be the subject of equitable relief, or give rise to an award of damages or other sanctions against a director of the corporation, in a proceeding by a shareholder or by or in the right of the corporation, on the ground that the director has an interest respecting the transaction, if any of the following conditions are satisfied:
(1) Directors’ action respecting the transaction was taken in compliance with R.S. 12:1-862 at any time.
(2) Shareholders’ action respecting the transaction was taken in compliance with R.S. 12: 1-863 at any time.
(3) The transaction, judged according to the circumstances at the relevant time, is established to have been fair to the corporation.
A director’s conflicting interest transaction, defined by La. R.S. 12:1-860(2), is:
ls(a) A transaction effected or proposed to be effected by the corporation, or by an entity controlled by the corporation, to which, at the relevant time, the director is a party.
(b) A transaction effected or proposed to be effected by the corporation, or by an entity controlled by the corporation, respecting which, at the relevant time, the director had knowledge and a material financial interest known to the director.
c) A transaction effected or proposed to be effected by the corporation, or by an entity controlled by the corporation, respecting which, at the relevant time, the director knew that a related person was a party or had a material financial interest.
Further, regarding fairness to the corporation, La. R.S. 12:1-860(3) reads:
“Fair to the corporation” means, for purposes of R.S. 12:1-861(B)(3), that the transaction as a whole was beneficial to the corporation, taking into appropriate account whether it was fair in terms of the director’s dealings with the corporation, and comparable to what might have been obtainable in an arm’s length transaction, given the consideration paid or received by the corporation.
(quotation marks in original).
A review of the record shows that the Association’s efforts to end the Weber entities’ short-term rental’s began, at the latest, on June 30, 2014, upon sending of a letter to the unit owners demanding an end to all short-term rentals at the condominium complex. Lobell and Lala were not members of the Board at that time, or when the follow-up letter was sent to the Weber entities on December 9, 2014, or when Bylaw 5.19 was presented to the unit owners for a vote. In fact, Lobell and Lala were only elected to the Board immediately prior to the vote, which was not a Board action, but a vote of all unit owners. All relevant Board actions either happened before the allegedly conflicted Board members were elected or after Bylaw 5.19 passed by 75.5810% of the vote of all unit owners. Because the allegedly conflicted Board members participated in none of the decisions leading to the enactment of Bylaw 5.19, no director’s conflict of interest was present in the enactment of Bylaw *478 5.19. Further, all enforcement proceedings |9after the enactment were a result of a majority mandate given by the,unit,owners—rendering them fair to the corporation judged by the circumstances at the time. See La. R.S. 12:1-860(3). Lala and Lobell acted in conformity with the prior Board and the wishes of all unit owners, and the record lacks evidence of bad faith.
This assignment of error lacks merit.
II. Invalid Adoption of Bylaw 5.19 and Exception of No Cause of Action
Next, PAJ and Vanderbilt allege that because Lobell was allbwed to change his vote, Bylaw 5.19 was never validly adopted. At trial, Lobell testified that he incorrectly filled out the ballot because he was not wearing his glasses, and when he informed everyone at the meeting of this, he was allowed to change his vote. The Association’s bylaws regarding voting procedure at meetings of the unit owners state, in relevant part:
“Unless otherwise expressly provided herein, any action may be taken at any meeting of the voting members at which a quorum is present upon the affirmative vote of the voting members having a majority of the total .present at such meeting.”
The record establishes that no one objected to Lobell being allowed to change his vote. Further, as the Association points out, PAJ and Vanderbilt cite no law or bylaw supporting the proposition that a condominium owner cannot change his vote during the meeting in which the vote was cast when no other unit owner objects to him doing so. The action in question, the passage of Bylaw 5.19, was taken by a majority of the unit owners at a meeting where a quorum was present.
This assignment of error lacks merit.
PAJ and Vanderbilt go on to allege that even if the vote itself was proper, Bylaw 5.19 was never properly adopted because it is a building restriction and the requirements for adoption of building restrictions were not followed. PAJ and 11flVanderbilt also raised this assignment of error as an exception of no cause of action.[12] In their exception of no cause of action, PAJ and Vanderbilt allege that because Bylaw 5.19 was not adopted as required for a building restriction, the Association has failed to state a cause of action.
“Building restrictions are charges imposed by the owner of an' immovable in pursuance of a general plan governing building standards, specified uses, and improvements. The plan must be feasible and capable of being preserved.” La. C.C. art. 775. A building restriction must be adopted by 100% of the owners of the properties it will apply to. La. C.C. art. 776 (stating “... Building restrictions may be established only by juridical act executed *479 by the owner of an immovable or by all the owners of the affected immovables”). A building restriction is a predial servitude, and governed by the law of predial servi-tudes to the extent that the nature of building restrictions is compatible with such laws. .La. C.C. art. 777.
However, the provisions of the Louisiana Condominium Act (La. R.S. 9:1121.101 et seq.) supersede the law of building restrictions in. the event of any conflict. La. C.C. art. 783. A condominium association has the-ability to govern “[t]he administration and operation of the condominium” through bylaws. La. R.S. 9:1123.106. Specifically, the Louisiana Condominium Act provides that bylaws Ingovern the “use of the condominium property.” Id. at (C)(1). Because the question of whether something is a building restriction or a condominium bylaw is a question of statutory interpretation, it is a question of law. See Louisiana Bureau of Credit Control, Inc. v. Landeche, 2008-1099, p. 2 (La.App. 3 Cir. 3/4/09), 6 So.3d 935, 937 (treating the question of whether an assessment was a building restriction or a personal obligation as a question of law); Hijazi v. Dentler, 2013-268, p. 5 (La.App. 3 Cir. 11/6/13), 125 So.3d 1280, 1284 (acknowledging, when analyzing the validity of a building restriction, that questions of statutory interpretation are questions of law).[13] The standard of review when an appellate court reviews a question of law is whether the district court’s interpretive decision is legally correct. 727 Toulouse, L.L.C. v. Bistro at the Maison De Ville, L.L.C., 2012-1014, p. 7 (La.App. 4 Cir. 8/21/13), 122 So.3d 1152, 1157.
An exception of no cause of action should be granted, only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim that would entitle him to relief. Industrial Cos., Inc. v. Durbin, 2002-0665, p. 7 (La. 1/28/03), 837 So.2d 1207, 1213. Because exceptions of no cause of action present legal questions, they are reviewed using the de novo standard of review. O’Dwyer v. Edwards, 2008-1492, p. 3 (La. App. 4 Cir. 6/10/09), 15 So.3d 308, 310 (internal citations omitted). The exception filed by PAJ and Vanderbilt assumes that Bylaw 5.19 is a building restriction and not a condominium bylaw. The limited function of an exception of no cause of action is to determine whether the law provides. a remedy to a plaintiff against these particular defendants. Hershberger v. 12kLKM Chinese, L.L.C., 2014-1079, p. 3 (La.App. 4 Cir. 5/20/15), 172 So.3d 140, 143. “The pertinent question is Whether, when viewed in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the petition states any valid cause of action for relief.” Phillips v. Gibbs, 2010-0175, p. 3 (La.App. 4 Cir. 5/21/10), 39 So.3d 795, 797 (citations omitted). Viewing the petition in the light most favorable to the Association, and resolving all doubt in favor of it, the petition states a valid cause of action for violations of a condominium bylaw. Whether that regulation is in fact a condominium bylaw and not-a building restriction is outside of the scope of the limited purpose of an exception of no cause of action. Accordingly, we deny the exception and reach the merits of this assignment of error.
Bylaw 5.19 prohibits unit owners from using their property for short-term rentals.[14] Use restrictions are expressly per *480 mitted in condominium declarations,[15] and rules “deemed necessary or desirable” for administration and operation of condominiums are permitted in condominium bylaws. La. R.S. 9:1123.106. The record reflects that Bylaw 5.19 is a use restriction that was deemed “necessary or desirable” for the administration of the condominium property by a 75.5810% vote of the unit owners. In contrast, under the law • of building restrictions, owners must unanimously enact a use restriction. La. C.C. art. 776. Given this conflict, the 11sLouisiana Condominium Act supersedes the law of building restrictions in this case. See La. C.C. art. 783.
According to the record, in the Association, bylaws must be adopted by a two-thirds majority. Because Bylaw 5.19 is a bylaw “deemed necessary or desirable” for administration and operation of condominiums rather than a building restriction, and the record establishes that it was passed by more than a two-thirds majority, this assignment of error lacks merit.[16]
III. Arbitration
Next, PAJ and Vanderbilt allege that the district court erred by failing to stay or dismiss the proceedings based on an arbitration clause in the bylaws. The arbitration clause at issue (“Bylaw 6.02”) reads:
In the event there is any dispute among the Unit Owners or among the members of the Board which is not reconciled by a vote pursuant to these By-Laws, such dispute shall be submitted to arbitration under the Louisiana Arbitration Act (LA R.S. 9:4201 et seq.).
A district court is required to stay proceedings and refer the matter to arbitration when the issue raised in litigation is arbitrable under the arbitration agreement. Int’l River Ctr. V. Johns-Manville Sales Corp., 2002-3060, pp. 2-3 (La. 12/3/03), 861 So.2d 139, 141. Arbitration is a contractual matter, and courts cannot compel parties to submit disputes to arbitration that they have not agreed to submit. Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc., 2003-1662, p. 7 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 386-87 (citations omitted). Appellate courts review denials of referrals for arbitration de novo, and review factual findings under the manifest error standard. Id., 2003-1662 at p. 10, 871 So.2d at 388.
In the case sub judice, Bylaw 6.02 is not susceptible of an interpretation that it could cover the dispute at issue. The only dispute presented is one between the Board and two unit owners. “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. C.C. art. 2046. The plain meaning of Bylaw 6.02 is that it applies to disputes among members of the Board or disputes among unit own *481 ers rather than disputes between the Board itself and the unit owners it governs. This assignment of error lacks merit.
Errors Assigned by the Weber Entities
I. Judgment in solido against the Weber entities
All three Weber entities argue that the district court erred by rendering judgment in solido against them.[17] “A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled.” La. C.C.P. art. 1841. A plaintiff cannot recover judgment against a defendant the plaintiff has never sued. Rowan v. Burke Homes, Inc., 2013-10, p. 2 (La.App. 3 Cir. 5/1/13), 157 So.3d 640, 641 (citations omitted). The issuance of permanent injunctions is reviewed under the manifest error standard. Yokum v. Funky, LLC, 2015-1353, p. 16 (La.App. 4 Cir. 9/28/16), 202 So.3d 1065, 1075 15(citations omitted). A district court’s award of damages is reviewed under the abuse of discretion standard. Sabillon v. Max Specialty Ins. Co., 2013-0513, p. 6 (La.App. 4 Cir. 3/12/14), 137 So.3d 707, 711.
New Jax[18] intervened in this suit, but the Association never amended its petition to name New Jax as a defendant. Interventions are incidental actions governed by La. C.C.P. art. 1091. Willis v. City of New Orleans, 2014-0098, p. 4 (La. App. 4 Cir. 6/18/2014), 143 So.3d 1232, 1235. Regarding intervenors, the Louisiana Practice Series on Louisiana Civil Pretrial Procedure reads as follows:
An intervenor has three options in filing an intervention: join with the plaintiff in demanding similar relief; join with the defendant in resisting the plaintiffs demands; or oppose both. Note, however, that no matter which party the inter-venor aligns with, the intervenor does not thereby become a plaintiff or a defendant.
La. Prac. Civ. Pretrial § 4:82 (2016-2017 ed.) (bullet points omitted) (emphasis added).
As quoted supra, Bylaw 5.19 provides that “[t]he Unit Owner and tenant/occupant breaching this provision... shall be liable jointly, severally, and in solido to the Association for all amounts received or the value received, costs, expenses and legal fees....” Granting the permanent injunction against New Jax was proper under La. C.C.P. art. 3605,[19] which expands the applicability of a [^district court’s judgment granting a preliminary injunction beyond the defendant judgment is *482 rendered against. Thus, the district court did not manifestly err in issuing a permanent injunction against the Weber entities.
However, Bylaw 5.19 does not vest the district court with the ability to render á monetary judgment against non-defendant intervenor New Jax. In the case sub judi-ce, the Association failed to properly name New Jax as a defendant so that the district court could include them in the judgment, As a result, we find that the district court abused its discretion by awarding damages in solido against the Weber entities. We vacate the portion of the district court’s judgment awarding the Association $250,991.24 in damages against the Weber entities in solido, and remand the case for a hearing to determine the amount of damages defendants PAJ and Vanderbilt owe the Association.[20]
Decree
For these reasons, we affirm the portion of the district court’s November 10, 2015 judgment granting the.Association a permanent injunction against the Weber entities. We reverse the portion of the judgment holding New Jax liable in solido with PAJ and Vanderbilt, vacate the district court’s award of damages, and remand the case for a determination of damages owed by PAJ and Vanderbilt.
AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; REMANDED

. The judgment notes that it was rendered following the two day trial, on November 10, 2015, but it was read and signed on February 11,2016.

. The Appellee herein is the association of condominium unit owners which governs and manages the condominium project, which itself is governed by a Board of Directors, pursuant to La. R.S. 9:1121.101 et seq. (the Louisiana Condominium Act).

.The Board’s letter cited to the following ordinances: New Orleans Code of Ordinances § 54-491.1(b) (making it "unlawful for any person to knowingly offer to rent for monetary compensation for a period of less, than 30 days or, in the case of premises located in the Vieux Garré District, 60 days, any living accommodations ... ”); and New Orleans Comprehensive Zoning Ordinance, at § 8.6.3 (providing, in pertinent part, that "timeshare buildings, transient vacation rentals, bed and breakfast facilities, [and] guest houses” are prohibited uses in the Vieux Carré Service District, where the New Jax Condominiums building is located).

. Mr. Weber testified at trial that he leased the property "because he saw the writing on the wall that there was going to be some issues with the rentals.” It should be noted that at the time of the lease, PAJ remained the owner of the Queen Suite, and Vanderbilt remained the owner of Unit B. The lease is only between Vanderbilt and New Jax despite the fact that it covers both units.

. Lobell is the other member of New Jax, along with. Weber. However, the record reflects that due to an apparent change in that business relationship that gave rise to litigation, at all times relevant to this appeal, Web *475 er made all decisions regarding the actions of New Jax.

. Because Lobell controls a significant amount of the vote due to the square footage of his units, Bylaw 5.19 passed once his vote was changed.

. Bylaw Article 5.18 states that “a lease for a period of less than six (6) months shall require the Unit Owner to make Such request, in writing, to the Board setting forth the names of the sub-lessee, type of instrument to be used and supply all information as may be required by the Association ... The foregoing regulation shall not apply to the Developer, or any person, firm or corporation as provided in the Declaration.”

. The district court also found Vanderbilt in contempt of court for continuing to operate short term rentals after the issuance of the preliminary injunction.

. According to Lala, Weber informed him that there would be no short-term rentals in the property when he bought his condominium. Lala has not, according to the record before this Court at the time of the writing of this opinion, filed a lawsuit or otherwise sought damages against Weber for this alleged fraud.

. On January 1, 2015, Louisiana adopted the Louisiana Business Corporation Act', which replaces the former Louisiana Business Corporation Law. 7 La. Civ. L. Treatise, Business Organizations § 22.01. Because Lala and Lo-bell were not elected to the Board until January 15, 2015, their conduct as directors is judged by the new Louisiana Business Corporation Act.

. La. R.S 12:1-861 Comment (a) reads, in relevant part:
*477 .. .The current approach differs sharply from that taken.. .under prior Louisiana law. Under the earlier approach, compliance with the statutory rules concerning what were then called self-dealing transactions did not wholly protect a transaction from a challenge based on the conflicting interest, it merely prevented application of the early corporation law rule that a self-dealing transaction was automatically voidable by the corporation without regard to the fairness of the transaction. See former R.S. 12:84.

. At the district court, on October 29, 2015, the Weber entities filed an exception of no cause of action asserting that Bylaw 5.19 was invalid because it had not been approved by 100% of the affected owners. An order was issued on October 30, 2015, setting the exception- for a hearing on November 9, 2015, which was the.same day as the trial on the permanent injunction. On November 9, 2015, the district court ruled that the exception was denied as moot. Although the denial of the exception was not a final judgment, "[i]t is well-settled that although an interlocutory judgment may not itself ,be immediately ap-pealable, it is nevertheless subject to review by an appellate court when a judgment is rendered in the case which is Appealable.” Favrot v. Favrot, 2010-0986, p. 2 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, 1102, n. 1. The proper procedure to seek review of an interlocutory judgment under the appeal of a final judgment is to include it in the assignments of error. See Lawson v. Straus, 98-2096, p. 4 (La.App. 4 Cir. 12/8/99), 750 So.2d 234, 238. Thus, the exception is properly before this Court, and we consider its merits infra.

. Cf. Flippo v. Mann, 50, 269, p. 9 (La. App. 2 Cir. 1/13/16), 185 So.3d 856, 862 (reviewing a district court’s factual finding that certain conduct violated a building restriction under the manifest error standard of review).

. Throughout their brief, PAJ and Vanderbilt imply that a bylaw must be an amendment to an existing building restriction. This is not the only purpose for which bylaws exist. See La. R.S. 9:1123.106 (stating that the “administra *480 tion and operation of the condominium shall be governed by the bylaws”); Harris v. Fed. Fibre Mills Condo. Ass'n, Inc., 2002-1715, p. 6 (La.App. 4 Cir. 3/19/03), 843 So.2d 457, 462 (acknowledging that bylaws may provide for the administration of a condominium complex).

. See La. R.S. 9:1122.105.

. PAJ and Vanderbilt also allege that the Association’s claims were prescribed under La. C.C. art. 781, which reads:
No action for injunction or for damages on account of the violation of a building restriction may be brought after two years from the commencement of a noticeable violation, After the lapse of this period, the immovable on which the violation occurred is freed of the restriction that has been violated,
Because we find that Bylaw 5.19 is not a building restriction, we pretermit this assignment of error.

. PAJ and Vanderbilt also argued that an award of monetary damages was improper because they believed that only the permanent injunction was set for trial. The record does not evidence that the trial on the Association’s claims for permanent injunction and damages was ever bifurcated by the district court. Further, because we remand this case for a determination of monetary damages owed by PAJ and Vanderbilt, we pretermit this assignment of error.

. New Jax, separately from the other Weber entities, also alleges that the district court erred by failing to find that “developer’s exclusion," included in the Association’s bylaws, applies to New Jax. Because we reverse and vacate the portion of the judgment awarding damages against New Jax on other grounds, we pretermit this assignment of error.

. La. C.C.P. art. 3605 reads:
An order granting either a preliminary or a final injunction or a temporary restraining order shall describe in reasonable detail, and not by mere reference to the petition or other documents, the act or acts sought to be restrained. The order shall be effective against the parties restrained, their officers, agents, employees, and counsel, and those persons in active concert or participation with them, from the time they receive actual knowledge of the order by personal service or otherwise.
(emphasis added).

; It should be noted that under La. C.C.P. art. 643, "one or more solidary obligors may be sued to enforce a solidary obligation, without the necessity of joining all others in the action.” The issue in the-case sub judice is not whether the Association properly sued to enforce the obligation, but whether the judgment itself was rendered against the correct parties. This opinion does not reflect the validity of Bylaw 5.19’s solidary liability provision, and should not be interpreted as altering the ability of PAJ and Vanderbilt to seek contribution against their fellow solidary obligor New Jax should a monetary damages judgment ultimately be rendered against them. See La. C.C.P. 1805.